IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:21-CV-112-FL

| | |
|---|---|
| BILLY SPEIGHT, Individually and on behalf of all others similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LABOR SOURCE, LLC, )<br>)<br>Defendant. ) | ORDER |

This matter is before the court on plaintiff's motion to certify conditionally this case as a collective action under the Fair Labor Standards Act, 29 U.S.C. § 203 et seq. ("FLSA"), (DE 7), and defendant's partial motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) (DE 14). The issues raised are ripe for ruling. For the following reasons, defendant's motion is granted in part and denied in part and plaintiff's motion is denied without prejudice.

## STATEMENT OF THE CASE

Plaintiff, a former employee of defendant, a staffing agency, commenced this action on August 12, 2021, asserting claims on behalf of himself and an almost nationwide collective of defendant's current and former employees under the FLSA,[1] and claims on behalf of himself and

---

[1] Plaintiff does not request that the collective include defendant's current and former employees in Minnesota. As he explains in his briefing, these employees "are already covered by a currently-pending lawsuit" in the United States District Court for the District of Minnesota. (Pl.'s Mem. (DE 8) at 2 n.1 (citing Murphy v. Labor Source, LLC, No. 19-CV-01929-ECW (D. Minn. filed July 23, 2019))).

a statewide class of defendant's current and former employees under the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1 et seq., pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff alleges that defendant has failed to pay him and other employees the required wages. Plaintiff seeks declaratory relief, certification of a FLSA collective and a Rule 23 class, compensatory damages, and attorneys' fees and costs,

Shortly after initiating suit, plaintiff moved to certify conditionally a FLSA collective defined as

> [a]ll current and former hourly, non-exempt employees including, but not limited to, laborers, non-exempt team leads, non-commercial drivers, technicians, carpenters, apprentices, cleaning crew, plumbers, welders, and other laborers with similar job duties employed by [d]efendant throughout the United States (except for the State of Minnesota), within the three years preceding the filing of this [a]ction until final resolution of the case.

(Compl. ¶ 46), and for notice to issue to potential collective members.[2] Plaintiff also moves to toll the statute of limitations on putative collective-members' FLSA claims. In support of this motion, plaintiff relies on: declarations of plaintiff, Nikia Maye ("Maye"), and Deantwone Norris ("Norris"), former employees of defendant, as well as William Hogg, an associate attorney at plaintiff's counsel's law firm, and deposition testimony from a case in the United States District Court for the District of Minnesota entitled <u>Murphy v. Labor Source, LLC</u>, No. 19-CV-01929-ECW, (the "Murphy suit"), of Marcquise Murphy, one of the plaintiffs in that suit. Plaintiff also

---

[2] Plaintiff does not seek to certify this matter as a Rule 23 class action yet, although the complaint defines the putative class as

> [a]ll current and former hourly, non-exempt employees, including but not limited to, laborers, non-exempt team leads, non-commercial drivers, technicians, carpenters, apprentices, cleaning crew, plumbers, welders, and other laborers with similar job duties employed by [d]efendant within the State of North Carolina at any time during the two years preceding the filing of this [c]omplaint through final resolution of the action.

(Compl. ¶ 63).

appends to his motion proposed notice, reminder, and opt-in forms related to the putative collective, should the motion be granted.

Defendant's partial motion to dismiss for the court's lack of personal jurisdiction is directed at claims brought on behalf of any putative member of the collective who is not a resident of North Carolina or did not work for defendant in North Carolina. Defendant relies upon declaration of Robert Reese ("Reese"), its chief operating officer, in furtherance of its motion to dismiss, and, again, in its opposition to conditional certification.

## STATEMENT OF FACTS

The facts alleged in plaintiff's complaint may be summarized as follows.

Plaintiff, a resident of Walstonburg, North Carolina, was employed by defendant between January and September of 2019. Defendant, a staffing agency with its principal office in Olathe, Kansas, and other main offices in Kansas City, St. Louis, San Antonio, Dallas, Houston, Brownsville, Orlando, and Pittsburgh, hires workers, generally manual laborers, to perform work on a project-by-project basis in various states. For example, defendant, through its local office in Goldsboro, North Carolina, tasked plaintiff with completing work as a manual laborer and non-commercial driver on projects in North Carolina, Florida, Pennsylvania, Ohio, Nebraska, West Virginia, and Virginia.

Plaintiff and the other employees worked on the projects for the benefit of defendant's customers. As an example from plaintiff's experience, he was hired by defendant to complete a job in Morehead City, North Carolina, (the "Morehead City project") on behalf of defendant's customer, BluSky Restoration Contractors LLC ("BluSky"). The Morehead City project is exemplary for all of the following described allegations.

3

After being hired for a project by defendant, the laborers are transported by passenger van or bus from the local office to the worksite. These worksites are allegedly often "hundreds of miles away from the workers' homes." (Compl. ¶ 30). The workers are not compensated for their time traveling and incur expenses during travel, including gas, tolls, and food. In fact, defendant deducts between $7 and $20 a week from each of its workers' pay, in part, for these expenses and for "shuttle fees." (Id. ¶ 34).

Once the workers arrive near the worksite, they stay at local accommodations, with four to six workers per two-bed room and with no means of traveling elsewhere. Akin to the travel expenses, workers are not reimbursed for any lodging expense, and, instead, a lodging fee is deducted from their weekly pay as part of the deduction mentioned above. This fee is deducted from their pay regardless of the actual room rate charged or number of workers per room.

A "crew leader" oversees defendant's workers once they are at the worksite. (Id. ¶ 31). This crew leader is typically a direct employee of defendant, who is supervised and directed by the relevant customer for the project. He or she helps keep track of the hours worked by the workers by requiring them "to sign a daily time sheet at the end of their shift." (Id.). The customer then collects and compiles the time sheets before submitting them to defendant, which then issues wages to the workers based thereon. However, plaintiff alleges that these time sheets are often inaccurate due to the customer's artificial reduction or underreporting of the hours the laborers worked. Moreover, defendant allegedly accepts the time sheets "at face value" and "does nothing to ensure the time sheets reflect the actual hours worked," despite plaintiff and others informing defendant that the hours they worked were being underreported. (Id. ¶¶ 32, 36).

According to the complaint, the inaccuracies in the time sheets are difficult for the workers to contest because they do not receive typical itemized wage statements and paychecks. Defendant

4

compensates its workers through a "pre-paid debit card system" and rarely provides a wage statement at all, let alone "ready access to itemized wage statements that list the total hours worked and total wages paid." (Id.). Employees' wage statements are only "available through an online subscription which requires [them] to pay a fee to view their wage statements," which, even then, "are inaccurate, incomplete, and do not itemize all deductions taken from [their] wages." (Id. ¶ 37)

Plaintiff alleges that the travel and lodging deductions combined with the inaccurate reporting of hours worked led to plaintiff, and leads to those similarly situated, being paid below the FLSA-mandated minimum wage and not being paid time-and-a-half for overtime. Plaintiff alleges that at each of the projects he worked on, defendant "instituted and implemented the[se] same policies and practices regarding timekeeping, recordkeeping, lodging, and expense deductions." (Id. ¶ 35). Plaintiff claims that his experience with defendant is representative of that of the putative FLSA collective and putative Rule 23 class.

Additional alleged facts pertinent to the motion will be discussed in the analysis below.

## COURT'S DISCUSSION

A.  Defendant's Motion (DE 14)

   1.  Standard of Review

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of a claim for lack of personal jurisdiction. "When a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014).[3] At this stage, the court "must construe all relevant

---

[3]  Internal citations and quotation marks are omitted from all citations unless otherwise specified.

5

Case 4:21-cv-00112-FL   Document 35   Filed 04/19/22   Page 5 of 20

pleading allegations in the light most favorable to plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989); see Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993) ("[T]he district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor.").

2. Analysis

Defendant argues that plaintiff's FLSA claims brought on behalf of putative collective members who worked for defendant outside of North Carolina or who are not residents of North Carolina must be dismissed for lack of personal jurisdiction. The court agrees, in part, as set forth below.

"[T]here are two paths permitting a court to assert personal jurisdiction over a nonresident defendant." Universal Leather, 773 F.3d at 559. "[A] plaintiff must show (1) . . . general jurisdiction over the defendant by demonstrating the defendant's continuous and systematic contact with the State"; or "(2) . . . specific jurisdiction over the defendant by demonstrating that the defendant purposely established minimum contacts in the forum state such that it should reasonably anticipate being haled into court there on a claim arising out of those contacts." Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd., 911 F.3d 192, 198 (4th Cir. 2018).[4] "General jurisdiction . . . extends to any and all claims brought against a defendant." Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024 (2021). However, specific jurisdiction is more limited, as it requires that the specific "claims . . . arise out of or relate to the defendant's contacts

---

[4] Although Rule 4(k) of the Federal Rules of Civil Procedure allows for personal jurisdiction over a defendant when accomplished by "[s]erving a summons . . . authorized by a federal statute," Fed. R. Civ. P. 4(k)(1)(C), and when "the defendant is not subject to jurisdiction in any state's court of general jurisdiction[] and . . . exercising jurisdiction is consistent with the United States Constitution and laws," if defendant is served with summons, Fed. R. Civ. P. 4(k)(2), the parties do not argue that either is implicated here.

with the forum." Id.; Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) ("[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.").

Here, with respect to general jurisdiction, the complaint does not allege sufficient contacts by defendant with North Carolina for exercise of general jurisdiction. (See, e.g., Compl. (DE 1) ¶¶ 14, 19). Plaintiff does not contend otherwise. (See Pl.'s Resp. (DE 20) at 8). Thus, the court turns to an analysis of specific jurisdiction.

"To determine whether specific jurisdiction lies in the forum state," the court "consider[s] (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 189 (4th Cir. 2016). The relevant considerations as to the first prong of the inquiry are

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

Sneha Media, 911 F.3d at 198-99. Here, according to the complaint, defendant maintained an office in Goldsboro in the state, initiated business in the state through hiring of workers therein and completion of projects on behalf of its customers, such as the Morehead City project, in the state, and otherwise purposefully availed itself of the privilege of conducting business in North Carolina. (See Compl. ¶¶ 2, 14, 16, 19, 28-29).

7

However, any part of plaintiff's FLSA claims on behalf of putative collective members who did not work in North Carolina, were not hired in North Carolina, or whose employment by defendant was not otherwise related to North Carolina, (see e.g., Compl. ¶¶ 45-46), does not "arise out of those activities directed at the State." Perdue Foods, 814 F.3d at 189. Those claims fail the requirements of specific jurisdiction where "what is needed . . . is a connection between the forum and the specific claims at issue." Bristol-Myers Squibb Co. v. Superior Ct. of Cal., 137 S. Ct. 1773, 1781 (2017). Accordingly, where plaintiff fails to allege such connections to the forum in regard to those claims, the court lacks specific personal jurisdiction over defendant as to the pertinent claims. See Perdue Foods, 814 F.3d at 189 (explaining that "[t]he plaintiff must prevail on each prong" of tripartite specific-jurisdiction analysis to demonstrate personal jurisdiction).

In sum, defendant's motion must be granted in that part relating to FLSA claims brought on behalf of putative collective members who did not work in North Carolina, were not hired in North Carolina, or whose employment by defendant was not otherwise related to North Carolina.[5]

Plaintiff raises a number of arguments contesting this conclusion, which are unavailing. Plaintiff argues that personal jurisdiction is only analyzed at level of the suit as a whole, and, relatedly, in the context of FLSA collective actions, that independent bases for exercise of personal jurisdiction over defendant as to opt-in plaintiffs are not required. Plaintiff further contends that even if personal jurisdiction questions are raised by the putative opt-plaintiffs' claims, the analysis is controlled by the Fifth Amendment and related principles, rather than the Fourteenth Amendment and its related minimum-contacts standard. Finally, plaintiff rests on the purported

---

[5] The court denies defendant's motion in that remaining part where it is based upon a category of "nonresident" putative collective members. Although defendant frames its motion in part as targeting the claims of nonresidents of the state, this category sweeps too broadly. There being no inherent reason on the alleged facts that a nonresident employee's FLSA claim could not arise from defendant's activities aimed at the state, such as where a nonresident worker comes into North Carolina to work, (see, e.g., Compl. ¶ 29), the court denies defendant's motion in that part.

policies undergirding the FLSA as demanding a different conclusion here. The court addresses each in turn.

   a. Suit/Claim Distinction

Plaintiff argues that considering the court's exercise of specific personal jurisdiction over an out-of-state defendant as it relates to FLSA opt-in plaintiffs' claims against the defendant impermissibly focuses on the "claim" rather than the "suit." (Pl.'s Mem. (DE 8) at 15; Pl.'s Resp. (DE 20) at 10-13). Often courts do discuss personal jurisdiction in terms of personal jurisdiction over the suit as a whole against a defendant, or personal jurisdiction over the defendant writ large. See, e.g., Daimler AG v. Bauman, 571 U.S. 117, 127 (2014); Perdue, 814 F.3d at 189.

This linguistic choice, however, does not negate that courts, just as regularly, analyze personal jurisdiction, and particularly, specific personal jurisdiction, in terms of "claims." See, e.g., Combs, 886 F.2d at 675 (considering whether "the district court had grounds for personal jurisdiction as to all or any of the claims" (emphasis added)); ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 391 (4th Cir. 2012) (explaining that the specific personal jurisdiction inquiry asks, in part, "whether the plaintiff['s] claims arise out of those activities [by defendant] directed at the State"); PTA-FLA, Inc. v. ZTE Corp., 715 F. App'x 237, 242 (4th Cir. 2017) ("For a court to exercise specific jurisdiction over a claim, there must be 'an affiliatio[n] between the forum and the underlying controversy.'" (alteration in original) (quoting Goodyear, 564 U.S. at 919)); see also Vallone v. CJS Sols. Grp., LLC, 9 F.4th 861, 865 (8th Cir. 2021) ("Personal jurisdiction must be determined on a claim-by-claim basis.").[6]

---

[6] This court's statement in Hicks v. Houston Baptist University "that personal jurisdiction must be analyzed at the level of the suit" must be understood in the context in which it arose, "a class action," in which "there is only one suit: the suit between [p]laintiff and [d]efendant." No. 5:17-CV-629-FL, 2019 WL 96219, at *5-6 (E.D.N.C. Jan. 3, 2019).

9

Moreover, Bristol-Myers, which plaintiff cites in support of a suit-level personal jurisdiction inquiry, in fact, stated that "[i]n order for a court to exercise specific jurisdiction over a claim," there must be an "affiliation between the forum and the underlying controversy." Bristol-Myers, 137 S. Ct. at 1781 (emphasis added); see also id. (identifying the Supreme Court of California's error when it "found that specific jurisdiction was present without identifying any adequate link between the State and the nonresidents' claims." (emphasis added)); id. ("Under the [erroneous] California approach, the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims." (emphasis added)).

Plaintiff's description of Bristol-Myers as involving only "mass tort cases" where the plaintiffs brought "individual lawsuits in the same forum," which he ostensibly contrasts with himself and the opt-in plaintiffs' "single action," (Pl.'s Resp. (DE 20) at 18), misunderstands the context of Bristol-Myers. The relevant "actions were assigned as a coordinated matter to a judge of the San Francisco Superior Court," Bristol-Myers Squibb Co. v. Superior Ct., 377 P.3d 874, 878 (Cal. 2016), rev'd 137 S. Ct. 1773, and the United States Supreme Court described the procedural context as "[m]ore than 600 plaintiffs . . . fil[ing] [a] civil action in California state court," with the "group of plaintiffs . . . fil[ing] eight separate complaints[.]" Bristol-Myers, 137 S. Ct. at 1777-78. Accordingly, plaintiff's assertion, implied or explicit, that Bristol-Myers involved 678 individual lawsuits is inaccurate and fails to provide a reason to find Bristol-Myers inapplicable. As the Bristol-Myers Court explained, "[t]he mere fact that other plaintiffs" in the action interacted with the accused product "and allegedly sustained the same injuries as did the nonresident[-plaintiffs] . . . does not allow . . . specific jurisdiction over the [nonresident-plaintiffs'] claims." Id. at 1781; Goodyear, 564 U.S. at 931 n.6 ("[E]ven regularly occurring sales

of a product in a State do not justify the exercise of jurisdiction <u>over a claim</u> unrelated to those sales." (emphasis added)).

In sum, plaintiff's proffered suit/claim dichotomy as it relates to the personal jurisdiction inquiry is unavailing, and fails to provide a reason to ignore <u>Bristol-Myers</u>'s clear commands, especially given the Court's statement therein that "[w]hat is needed" for specific personal jurisdiction "and what [was] missing [t]here[,] is a connection between the forum <u>and the specific claims at issue</u>." <u>Bristol-Myers</u>, 137 S. Ct. at 1781 (emphasis added). The specific claims at issue, here, are those of the putative opt-in plaintiffs against defendant, specifically, those arising from work outside of or otherwise unrelated to North Carolina.

      b.    Character of FLSA Actions

Plaintiff further relies on the particular character of an FLSA collective action as meriting disregard of personal jurisdiction questions as to the putative opt-in plaintiffs and as distinguishing the applicability of analysis engaged in by the Supreme Court in <u>Bristol-Myers</u>. Plaintiff claims that the court should follow in line with a handful of district courts in the circuit, with which the United States Court of Appeals for the First Circuit's opinion in <u>Waters v. Day & Zimmermann NPS, Inc.</u>, 23 F.4th 84 (1st Cir. 2022), decided after the instant briefing, comports, that conclude that <u>Bristol-Myers</u>'s analysis or holding does not analogously apply to FLSA collective actions. <u>Waters</u>, 23 F.4th at 92-93; <u>Hunt v. Interactive Med. Specialists, Inc.</u>, No. 1:19-CV-13, 2019 WL 6528594, at *2 (N.D. W. Va. Dec. 4, 2019) ("[T]he Court concludes that <u>Bristol-Myers</u> . . . does not apply to FLSA collective actions."); <u>O'Quinn v. TransCanada USA Servs., Inc.</u>, 469 F. Supp. 3d 591, 613 (S.D.W. Va. 2020) ("I find that the holding in [<u>Bristol-Myers</u>] does not apply to FLSA collective actions.").

11

The court, accordingly, considers again the holding of Bristol-Myers itself. Bristol-Myers held that nonresident plaintiffs filing eight separate complaints in a California mass tort action could not invoke a California state court's specific personal jurisdiction because their claims were not related to defendant's contacts with the forum, despite the fact that other California-residing plaintiffs' claims against defendant were proper invocations of the state court's jurisdiction. 137 S. Ct. at 1778, 1781, 1783.

The United States Court of Appeals for the Fourth Circuit has not decided whether Bristol-Myers's holding extends to either federal collective action claims under the FLSA or, potentially analogous, federal class action claims. However, this court has held that "Bristol-Myers . . . does not apply in" the case of putative, unnamed Rule 23 class members who may be out-of-state residents, on whose behalf the named plaintiff brought suit. Hicks, 2019 WL 96219, at *5-6; accord Lyngaas v. Ag, 992 F.3d 412, 433 (6th Cir. 2021); Mussat v. IQVIA, Inc., 953 F.3d 441, 447 (7th Cir. 2020). Yet, two federal courts of appeals have held that "[t]he principles animating Bristol-Myers's application to mass actions under California law apply with equal force to FLSA collective actions under federal law," Canaday v. Anthem Companies, Inc., 9 F.4th 392, 397 (6th Cir. 2021); Vallone, 9 F.4th at 866, in conflict with the district court cases cited by plaintiff and with Waters.

The court finds the question of whether Bristol-Myers's analysis analogously applies to putative opt-in plaintiffs' FLSA claims that are unrelated to the forum state to be controlled by the nature of FLSA collective actions, which is instructively distinguishable from the nature of a Rule 23 class action.[7]

---

[7] Accordingly, insofar as plaintiff relies on the holdings of cases like Mussat, which considered the question in the context of a Rule 23 class action, those cases are inapt to the instant question.

Section 216 of Title 29 of the United States Code makes employers who violate certain provisions of the FLSA liable to the employees affected. 29 U.S.C. § 216(b). "An action to recover th[at] liability . . . may be maintained against any employer . . . in any [f]ederal or [s]tate court of competent jurisdiction by any one or more employees for and in [sic] behalf of himself or themselves and other employees similarly situated." Id. However, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Id.

Thus, FLSA collective actions are distinct from Rule 23 class actions in that "potential plaintiffs can join an FLSA collective action only by affirmatively giving consent in writing to become a party." Degidio v. Crazy Horse Saloon & Rest. Inc., 880 F.3d 135, 137 n.1 (4th Cir. 2018). As the Supreme Court has explained, the FLSA's opt-in requirement, added by congressional amendment subsequent to the act's initial passage, works towards "the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers of the burden of representative actions." Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 173 (1989). Thus, unlike "nonnamed class members," who "may be parties for some purposes and not for others," Devlin v. Scardelletti, 536 U.S. 1, 2 (2002), a "similarly-situated employee" who "opts in" is "a 'party plaintiff.'" Simmons v. United Mortg. & Loan Inv., LLC, 634 F.3d 754, 758 (4th Cir. 2011).

In light of this distinct statutory scheme, federal courts have described a FLSA "collective action [as] more accurately described as a kind of mass action, in which aggrieved workers act as a collective of individual plaintiffs with individual cases." Campbell v. City of Los Angeles, 903 F.3d 1090, 1105 (9th Cir. 2018); Canady, 9 F.4th at 397; Abraham v. St. Croix Renaissance Grp., L.L.L.P., 719 F.3d 270, 272 n.1 (3d Cir. 2013) ("A mass action is more akin to an opt-in than it is

13

to a class action." (citing 29 U.S.C. § 216(b))); see also Scott v. Chipotle Mexican Grill, Inc., 954 F.3d 502, 519 (2d Cir. 2020) (describing a "collective action under § 216(b)" as a "nonrepresentative action"). Thus, while "[a]n unnamed member of a proposed but uncertified class is not a party to the litigation," Quicken Loans Inc. v. Alig, 737 F.3d 960, 966 (4th Cir. 2013), "those who opt in" to FLSA collective actions "become party plaintiffs upon the filing of a consent and . . . nothing further, including conditional certification, is required." Mickles v. Country Club Inc., 887 F.3d 1270, 1278 (11th Cir. 2018); see also Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 75 (2013) ("Under the FLSA, by contrast [to Rule 23 certification], 'conditional certification' does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees[.]").

Taken together, the foregoing principles of law combine to counsel that FLSA opt-in plaintiffs' claims against a defendant must present independent, sufficient bases for exercise of the court's specific personal jurisdiction over that claim in reference to the defendant. Therefore, Bristol-Myers, to the extent its holding was anything but application of "settled principles regarding specific jurisdiction," 137 S. Ct. at 1781, requires that the court dismiss the claims in plaintiff's complaint on behalf of putative plaintiffs that opt-in to the collective action to the extent those putative plaintiffs did work in states other than North Carolina or whose employment with defendant otherwise had no connection to this state. (See, e.g., Compl. ¶ 1, 4, 45-46).

c. Fifth and Fourteenth Amendments

Plaintiff nonetheless relies on the distinction between the Fifth and Fourteenth Amendments to explain the inapplicability of Bristol-Myers's reasoning, which explicitly relied on the "Fourteenth Amendment limits [to] the personal jurisdiction of state courts," Bristol-Myers,

14

137 S. Ct. at 1779. (Pl.'s Resp. (DE 20) at 14-15 ("[A]ny due process limits on the federal courts stem from the Fifth Amendment rather than the Fourteenth, as federal courts are not state institutions.")). Plaintiff's argument with respect to this issue is consistent with the First Circuit's recent conclusion in Waters that "[t]he Fifth Amendment does not bar an out-of-state plaintiff from suing to enforce their rights under a federal statute in federal court if the defendant maintained the requisite minimum contacts with the United States." 23 F.4th at 92.[8]

Undisputedly, the Fourteenth Amendment "applies of its own force only to states." ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 622-23 (4th Cir. 1997). Bristol-Myers, itself, "le[ft] open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." 137 S. Ct. at 1784.[9] Nevertheless, no binding law counsels the application of such a nationwide jurisdictional test here, where the FLSA does not allow nationwide service and it is undisputed that Rule 4(k)(2) is inapplicable. See United States v. Batato, 833 F.3d 413, 423 n.3 (4th Cir. 2016); Sneha Media, 911 F.3d at 198 (explaining that "Rule 4(k)(2) jurisdiction" requires, inter alia, a "demonstrati[on] that no State can exercise personal jurisdiction over the defendant"); Autoscribe Corp. v. Goldman & Steinberg, No. 94-

---

[8] Plaintiff also asserts that any Fourteenth Amendment-guided constraints on the court's exercise of personal jurisdiction are inapt where "such limitations are grounded in the 'federalism interests.'" (Pl.'s Resp. (DE 20) at 13 (quoting Bristol-Myers, 137 S. Ct. at 1780)). However, the Supreme Court has also recognized that "[p]ersonal jurisdiction . . . restricts 'judicial power not as a matter of sovereignty, but as a matter of individual liberty,' for due process protects the individual's right to be subject only to lawful power." J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 884 (2011) (plurality opinion) (quoting Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982)).

[9] In fact, the Supreme Court has not yet supplied the precise parameters of the Fifth Amendment's constraints on federal courts' exercise of personal jurisdiction. See, e.g., Bristol-Myers, 137 S. Ct. at 1779; J. McIntyre, 564 U.S. at 884. The Fourth Circuit's analysis of the Fifth Amendment's limits on personal jurisdiction has been constrained primarily to instances of federal statutes authorizing nationwide service or service under Rule 4(k)(2). See, e.g., Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 443-44 (4th Cir. 2015) ("To make out a Fifth Amendment challenge to personal jurisdiction, [d]efendants had to show that the district court's assertion of personal jurisdiction over them would result in such extreme inconvenience or unfairness as would outweigh the congressionally articulated policy evidenced by a nationwide service of process provision."); ESAB Grp., 126 F.3d at 627.

1749, 1995 WL 56662, at *4 (4th Cir. Feb. 3 1995) (per curiam) ("[T]he Supreme Court has expressly declined to determine whether a defendant's aggregate national contacts are in any way relevant in a federal question case when there is no provision for nationwide service of process.").[10]

Rather, the Fourth Circuit has consistently counseled that the Fourteenth Amendment's constraints on the forum state's courts' exercise of personal jurisdiction are pertinent to the personal jurisdiction inquiry for a federal court in that state, primarily through operation of Rule 4(k)(1)(A) and its mandates for service of summons. See, e.g., ESAB Grp., 126 F.3d at 622-23 ("[T]he court's] inquiry into the federal court's jurisdiction pursuant to Rule 4(k)(1)(A) incorporates the Fourteenth Amendment due process standard."); Young v. New Haven Advoc., 315 F.3d 256, 261 (4th Cir. 2002) ("A federal court may exercise personal jurisdiction over a defendant in the manner provided by state law.").

In fact, the Supreme Court has explained that "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied," in addition to the requirements of "notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum." Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987); see, e.g., Fidrych v. Marriott Int'l, Inc., 952 F.3d 124, 131 (4th Cir. 2020) ("[T]he exercise of personal jurisdiction must comport with the requirements of the Due Process Clause: valid service of process, as well as minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.").

---

[10] Neither the Supreme Court nor the Fourth Circuit have accorded Republic of Argentina v. Weltover, Inc., 504 U.S. 607 (1992), the exceedingly broad reading for which plaintiff advocates. (See Pl.'s Resp. (DE 20) at 15 (citing Weltover, 504 U.S. at 619-20)).

16

Rule 4 of the Federal Rules of Civil Procedure generally controls service of summons in any federal action. Rule 4(k)(1) provides that "[s]erving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1). North Carolina's long-arm statute, the relevant state law determining the jurisdiction of a court of general jurisdiction in North Carolina, "permits the exercise of personal jurisdiction over a defendant to the outer limits allowable under federal due process." Universal Leather, 773 F.3d at 558.

Therefore, "[b]ecause Rule 4(k)(1)(A) delimits the scope of effective federal service in terms of the limits on state court jurisdiction, [the court's] inquiry into the federal court's jurisdiction pursuant to Rule 4(k)(1)(A) incorporates the Fourteenth Amendment due process standard, even though that Amendment applies of its own force only to states." ESAB Grp., 126 F.3d at 622-23; see Daimler, 571 U.S. at 125 ("Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."). See generally 4 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil § 1068.1 (3d ed. 2010) ("The minimum contacts doctrine originated in a line of cases that, strictly speaking, dealt only with the jurisdictional powers of state—not the federal—courts. Nevertheless, there were compelling historical and practical reasons why the new Fourteenth Amendment doctrine quickly came to be applied in the federal courts as well." (footnote omitted)).

While the Waters court reasoned that "Rule 4 is concerned with initial service, not jurisdictional limitations after service," 23 F.4th at 98-99, it would be incongruous that a plaintiff could bring suit on a federal claim arising from defendant's contacts in the forum state and serve summons on defendant in accord with Rule 4(k)(1)(A), only to then later join other plaintiffs and their claims to the suit, which the court could not have exercised personal jurisdiction over if they

17

initiated their own suits, due to Rule 4(k)(1)(A)'s constraints. Canaday, 9 F.4th at 400 ("These core limitations on judicial power would be one amended complaint—with potentially new claims and new plaintiffs—away from obsolescence.").[11] On plaintiff's theory, the court's jurisdictional reach over these new claims against defendant would constrained only by the Fifth Amendment's more permissive requirements, which have only been applied in the context of nationwide service statutes and Rule 4(k)(2) by the Fourth Circuit. See Trustees of the Plumbers, 791 F.3d at 444. The court will not read such a loophole into an important limitation on this court's permissible exercise of jurisdiction. See generally Wright, Miller & Khan, supra, § 1146 ("It is clear, however, that Rule 5 itself[, which generally controls service of documents after the original complaint,] cannot be used as a means to circumvent the ordinary jurisdictional inquiry.").

        d.    FLSA Collective Action Policy

Plaintiff contends that requiring FLSA opt-in plaintiffs to meet the traditional requirements for the court's exercise of personal jurisdiction over defendant in regard to their claims would vitiate FLSA collective actions. This argument tracks the reasoning proffered by the court in Swamy v. Title Source, Inc., No. 3:17-cv-01175-WHA, 2017 WL 5196780 (N.D. Cal. Nov. 10, 2017). The Swamy court reasoned that a holding in line with the one herein "would splinter most nationwide collective actions, trespass on the expressed intent of Congress, and greatly diminish the efficacy of FLSA collective actions as a means to vindicate employees' rights." Id. at *2.

However, Swamy is not persuasive authority because it relies on the misplaced principle that, in an FLSA action, the suit is akin to a representational action in which the "named plaintiff"

---

[11] While the Fourth Circuit has recognized the principle of "pendent personal jurisdiction," it has done so in the specific context of "a district court which has obtained personal jurisdiction over a defendant by reason of a federal claim" through reliance on a nationwide service provision and Rule 4(k)(2). ESAB Grp., 126 F.3d at 628-29; Grayson v. Anderson, 816 F.3d 262, 271 (4th Cir. 2016) ("[I]f a plaintiff properly invokes Rule 4(k)(2), it can rely on pendent jurisdiction for its state law claims, so long as those claims arose under the same nucleus of operative facts.").

18

is the crux of all analysis. See id. That proposition has been rejected specifically by Swamy's resident court of appeals, see Campbell, 903 F.3d at 1105, and generally disapproved of by the Supreme Court. See, e.g., Hoffman-La Roche, 493 U.S. at 173 (explaining that the opt-in requirement was passed to "free[] employers of the burden of representative actions"). The fact that an FLSA claim is "a federal claim created by Congress specifically to address employment practices nationwide," Swamy, 2017 WL 5196780, at *2; (Pl.'s Resp. (DE 20) at 17), fails to explain why the evils targeted by the FLSA could only be addressed by nationwide collectives, and would seemingly apply to the majority of federal statutes that create causes of action.

Finally, plaintiff suggests it is an impermissible result of the instant holding that FLSA plaintiffs will need to seek "certification of nationwide or multistate class actions . . . in the one or two states where the defendant is subject to general jurisdiction." (Pl.'s Resp. (DE 20) at 8). However, the court is unconvinced that this result belongs in the "parade of horribles that [plaintiff] conjure[s] up," as Bristol-Myers itself recognized that the solution for the plaintiffs before it was to "join[] together in a consolidated action in the States that have general jurisdiction over [Bristol-Myers Squib]." 137 S. Ct. at 1783; see also Canaday, 9 F. 4th at 400-01 (noting that the plaintiffs before it were not without recourse where "employees may file a nationwide collective action under the FLSA so long as they do so in a forum that may exercise general jurisdiction over the employer—namely its principal place of business or its place of incorporation").

In sum, plaintiff fails to demonstrate that exercise of personal jurisdiction over defendant by the court would be proper as it relates to claims on the putative opt-in plaintiffs' behalf based on their work with no relation to the forum state. Thus, grant, in part, of defendant's partial motion to dismiss is proper. Plaintiff contends that this determination is premature, but he has brought the issue to head by seeking contemporaneous certification of a collective that would include such

19

putative opt-in plaintiffs. The court will not engage in the futile exercise of certifying a nationwide collective and authorizing notice to putative opt-in plaintiffs who would shortly thereafter have their claims dismissed upon the court's above rationale.

Plaintiff's claims on behalf of a collective that would include opt-in plaintiffs who did not work in North Carolina on defendant's behalf or otherwise have the requisite connection to the state are dismissed without prejudice.

B.   Plaintiff's Motion (DE 7)

Given disposition of defendant's motion to dismiss, the court correspondingly denies without prejudice plaintiff's motion to certify conditionally the proposed FLSA collective where it would include "non-exempt manual laborers of [defendant] who were employed by [it] in the United States" generally. (Pl.'s Mot. (DE 7) at 1). Hence, plaintiff's arguments regarding tolling are not addressed.

## CONCLUSION

Based on the foregoing, defendant's partial motion to dismiss (DE 14) is GRANTED in part and DENIED in part, as described herein. Plaintiff's motion to certify conditionally this case as a FLSA collective action (DE 7) is DENIED without prejudice. Per the court's December 21, 2021, order (DE 26), the parties shall file a supplement to their joint report and plan within 21 days of this order.

SO ORDERED, this the 19th day of April, 2022.

_____
LOUISE W. FLANAGAN
United States District Judge