IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:21-CV-112-FL

| | | |
|---|---|---|
| WILLIAM SPEIGHT, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| LABOR SOURCE, LLC, | ) ) | ORDER |
| Defendant. | ) | |

This matter comes before the court on plaintiff's motion for leave to file first amended complaint and amend scheduling order (DE 99). Also pending is plaintiff's motion to certify class (DE 81). The issues have been briefed fully, and in this posture are ripe for ruling. For the following reasons, plaintiff's motion to amend is granted in part and denied in part and his motion to certify class is terminated as moot.

**STATEMENT OF THE CASE**

Plaintiff, a former employee of defendant, a staffing agency, commenced this action on August 12, 2021, asserting claims on behalf of himself and an almost nationwide collective of defendant's current and former employees under the FLSA; as well as claims on behalf of himself and a statewide class of defendant's current and former employees under the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-250.1 et seq., pursuant to Rule 23 of the Federal Rules of Civil Procedure. The complaint, alleging that defendant failed to pay plaintiff and other employees

required wages, seeks declaratory relief, certification of a FLSA collective and a Rule 23 class, compensatory damages, and attorneys' fees and costs.

On December 21, 2021, the court set certain deadlines and continued others, at the parties' request, until plaintiff's motion to certify class and defendant's partial motion to dismiss, which were then pending, had been ruled upon. Under the terms of that order, plaintiff's deadline to move for leave to join additional parties or to otherwise amend the pleadings was February 18, 2022.

By order entered April 19, 2022, the court denied without prejudice plaintiff's motion to certify class, granted defendant's motion to dismiss with respect to opt-in plaintiffs who did not work in North Carolina on defendant's behalf or otherwise have the requisite connection to the state, and instructed the parties to file a supplemental joint report under Fed. R. Civ. P. 26(f). After receiving the parties' joint revised Rule 26(f) report, the court entered an amended case management order, which set deadlines related to class certification but did not alter plaintiff's deadline for moving to amend or to add parties.

On August 18, 2022, the court granted the parties' stipulation to certify conditionally the FLSA collective under 29 U.S.C. § 216. Thereafter, plaintiff filed the instant motion to certify a class of current and former hourly, non-exempt employees of defendant and a subclass of those class members designated as or performing the duties of a crew lead. Plaintiff filed in support of the motion opt-in discovery responses, deposition excerpts, and declarations by plaintiff and putative new plaintiffs. Defendant responded in opposition, relying on a declaration by Robert Reese ("Reese"), defendant's chief operating officer, deposition excerpts, and discovery responses, and plaintiff replied.

Thereafter, plaintiff filed the instant motion to file amended complaint and amend scheduling order, relying on various discovery materials and a declaration by plaintiff. Defendant responded in opposition, relying on a declaration by Justin M. Dean, its attorney, a complaint filed in the United States District Court for the District of Minnesota, a notice of consent filed by plaintiff in that action, a declaration by Reese, and an excerpt from a deposition. Plaintiff replied. The proposed amended complaint seeks to add as plaintiffs Nikia Maye ("Maye"), Jason Hagens ("Hagens"), Scottie Williams ("Williams"), and Tangela Flanagan ("Flanagan"),[1] hereinafter referred to as "putative new plaintiffs," and BluSky Restoration Contractors, LLC ("BluSky"), BMS Cat, LLC ("BMS"), Interstate Restoration LLC d/b/a First OnSite Restoration ("Interstate"), DSI Holdings Corporation d/b/a/ Service Master DSI Corporation ("DSI"), and Servpro of Greater Birmingham, Inc. ("Birmingham"), hereinafter referred to as "putative new defendants," as defendants.

## STATEMENT OF FACTS

The relevant facts in plaintiff's original complaint, some of which are detailed in the court's April 19, 2022, order, may be summarized as follows.

Plaintiff Billy Speight, a resident of Walstonburg, North Carolina, was employed by defendant between January and September of 2019. Defendant, a staffing agency with its principal office in Olathe, Kansas, hires workers, generally manual laborers, to perform work on a project-by-project basis in various states. For example, defendant, through its local office in Goldsboro, North Carolina, tasked plaintiff with completing work as a manual laborer and non-commercial driver on projects in North Carolina, Florida, Pennsylvania, Ohio, Nebraska, West Virginia, and Virginia.

---

[1]     No known relation to the undersigned.

3

Plaintiff and other laborers worked on projects for the benefit of defendant's customers. After being hired for a project by defendant, the laborers are transported by passenger van or bus from the local office to the worksite, which allegedly is often "hundreds of miles away from the workers' homes." (DE 1 ¶ 30). The workers are not compensated for their time traveling and incur expenses during travel, including gas, tolls, and food. (Id.). Defendant deducts between $7 and $20 a week from each of its workers' pay, in part, for these expenses and for "shuttle fees." (Id. ¶ 34).

Once the workers arrive near the worksite, they stay at local accommodations, with four to six workers per two-bed room and no means of traveling elsewhere. (Id. ¶ 30). Akin to the travel expenses, workers are not reimbursed for any lodging expense, and, instead, a lodging fee is deducted from their weekly pay regardless of the actual room rate charged or number of workers per room. (Id. ¶ 34).

A "crew leader" oversees defendant's workers once they are at the worksite. (Id. ¶ 31). This crew leader is typically a direct employee of defendant, who is supervised and directed by the relevant customer for the project. He or she helps keep track of the hours worked by the workers by requiring them "to sign a daily time sheet at the end of their shift." (Id.). The customer then collects and compiles the time sheets before submitting them to defendant, which then issues wages to the workers based thereon. (Id.). However, plaintiff alleges that these time sheets are often inaccurate due to artificial reduction or underreporting of the hours the laborers worked, and defendant "does nothing to ensure the time sheets reflect the actual hours worked," despite plaintiff and others informing defendant that the hours they worked were being underreported. (Id. ¶ 32).

According to the original complaint, the inaccuracies in the time sheets are difficult for the workers to contest because they do not receive itemized wage statements or paychecks. (Id. ¶ 37).

Defendant compensates its workers through a "pre-paid debit card system" and rarely provides a wage statement at all, let alone "ready access to itemized wage statements that list the total hours worked and total wages paid." (Id. ¶ 32).

Plaintiff alleges that the travel and lodging deductions combined with the inaccurate reporting of hours worked led to plaintiff and those similarly situated being paid below the FLSA-mandated minimum wage and not being paid time-and-a-half for overtime. Plaintiff alleges that at each of the projects he worked on, defendant "instituted and implemented the[se] same policies and practices regarding timekeeping, recordkeeping, lodging, and expense deductions." (Id. ¶ 35). Plaintiff claims that his experience with defendant is representative of that of the FLSA collective and putative Rule 23 class. (Id. ¶ 83).

## COURT'S DISCUSSION

A.    Standard of Review

"[A]fter the deadlines provided by a scheduling order have passed, the good cause standard [of Federal Rule of Civil Procedure 16] must be satisfied to justify leave to amend the pleadings." Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008).[2] Under Rule 16, a scheduling order "may be modified only for good cause." Fed. R. Civ. P. 16(b)(4). The court must also then consider separately whether the motion to amend should be granted under Rule 15. See HCMF Corp. v. Allen, 238 F.3d 273, 278 (4th Cir. 2001).

B.    Analysis

Plaintiff moves to amend his complaint to add as defendants BluSky, BMS, Interstate, DSI, and Birmingham (hereinafter referred to as "putative new defendants"); to add as plaintiffs Maye, Hagens, Williams, and Flanagan as plaintiffs (herein referred to as "putative new plaintiffs"); and

---

[2]    Throughout this order, internal citations and quotation marks are omitted unless otherwise specified.

to add subclasses corresponding to laborers employed on projects for each of putative new defendants and laborers designated as crew leads. Defendant contends that good cause for amending the case management order does not exist under Rule 16 and leave should not be granted under Rule 15. As set forth more fully below, the court agrees that adding defendants at this late stage is incompatible with due process under Rule 15 and that good cause does not exist to add Maye as a plaintiff under Rule 16. However, plaintiff is granted leave to join Hagens, Williams, and Flanagan as plaintiffs in this action and to add a subclass of crew leads.

Though the United States Court of Appeals for the Fourth Circuit has not explicitly defined "good cause" in a reported opinion, it has recognized in unpublished opinions that "Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party." Montgomery v. Anne Arundel County, 182 F. App' x 156, 162 (4th Cir. 2006). "Good cause requires the party seeking relief [to] show that the deadlines cannot reasonably be met despite the party's diligence, and . . . the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule." Cook, 484 F. App'x at 815 (alterations in original). The burden is on the " movant . . . [to] demonstrate that the reasons for the tardiness of his motion justify a departure from the rules set by the court in its scheduling order." United States v. Godwin, 247 F.R.D. 503, 506 (E.D.N.C. 2007); see also Montgomery, 182 F. App'x at 162 (inquiring into whether the moving party had a " good reason for [its] tardy submission of the motion to amend" ).

Rule 15 provides a more lenient standard, under which "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). A motion for leave to amend should be allowed " [i]n the absence of . . . undue delay, bad faith or dilatory motive on the part of the

movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). "A proposed amendment is . . . futile if the claim it presents would not survive a motion to dismiss." Save Our Sound OBX, Inc. v. N. Carolina Dep' t of Transportation, 914 F.3d 213, 228 (4th Cir. 2019); see In re Triangle Cap. Corp. Sec. Litig., 988 F.3d 743, 750 (4th Cir. 2021) (" [D]istrict courts are free to deny leave to amend as futile if the [pleading] fails to withstand Rule 12(b)(6) scrutiny." ).

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to ' state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, " [the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider " legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

1.      Putative New Defendants

Defendant asserts that plaintiff's proposed claims against newly added defendants fail to meet the Rule 15 standard for futility where they are time-barred and do not relate back to the original complaint. The court agrees.

The FLSA provides a statute of limitation of two years, or three years if the violation is willful. See 29 U.S.C. § 255. The NCWHA requires that actions be brought within two years.

---

[3]      Internal citations and quotation marks are omitted from all citations unless otherwise specified.

See N.C.G.S. § 95-25.22(f). Defendant asserts that it has staffed no projects in North Carolina for any of the proposed defendants since February 2021, and plaintiff does not dispute this claim. Therefore, plaintiff may not bring new defendants into this case unless his allegations relate back to the original complaint.

An amendment to a pleading relates back to the date of the original pleading when "the party to be brought in by amendment received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c). Relation back "depends on what the party to be added knew or should have known." Krupki v. Costa Crociere, S.p.A., 560 U.S. 538, 541 (2010).

No allegations in the complaint or evidence in the record suggests that the newly proposed defendants had any notice of this action. While BluSky had notice of a related action in the United States District Court for the District of Minnesota, (see, e.g., DE 101-8 at 2), plaintiff has neither alleged nor shown that BluSky was aware of the instant action. Neither are there allegations or evidence to support a contention that these parties knew or should have known they would be named but for a mistake concerning the proper party's identity. The original complaint references "[d]efendant's customers" only to explain defendant's alleged failures to comply with the law rather than alleging that the customers committed independent unlawful acts. (See, e.g., DE 1 at 21 (alleging that defendant "permit[ed] or otherwise fail[ed] to correct" its customers' "practice of under-reporting or otherwise artificially reducing the total hours reported worked"); DE 1 at 19 (alleging that defendant's "violative overtime practices occur in a similar fashion . . . throughout the United States, regardless of the specific customer/principal that hired [d]efendant) (emphasis

8

added). Imputing the knowledge required by Rule 15(C)(ii) therefore is unreasonable in this instance.

Plaintiff contends that "notice may be presumed when the nature of the claim is apparent in the initial pleading and the added defendant has . . . a sufficient identity of interest with the original defendant[.]" (DE 109). The cases plaintiff cites for its "identity of interest" argument, however, featured different relationships between named and added defendants than the supplier-customer relationship at issue here. See, e.g., Goodman v. Praxair, Inc., 494 F.3d 458, 474-75 (4th Cir. 2007) (noting that defendant and putative new defendant were "parent and subsidiary [and] employ[ed] the same attorneys," which eliminated "any worry that [putative new defendant] was caught by surprise when the complaint was amended"); Western Contracting Corp. v. Bechtel Corp., 885 F.2d 1196, 1201 (4th Cir. 1989) (finding that plaintiff's claims against putative new defendants, defendant's employees, did not relate back).

Plaintiff has not cited, and this court has not found, any case holding that notice may be imputed to a defendant's customers. Accordingly, that part of plaintiff's motion seeking leave to add additional defendants to this case is denied.

2.      Putative New Plaintiffs

By contrast, plaintiff has shown good cause to add new plaintiffs, except with respect to putative new plaintiff Maye.

As an initial matter, Maye signed an opt-in consent form July 7, 2021, which plaintiff filed as an attachment to the original complaint on August 12, 2021. (DE 1-4 at 2). This form states that May worked as a "[c]rew [l]eader, [m]annual [l]aborer, and [n]on-[c]ommercial [d]river for [d]efendant . . . from approximately . . . 2018 to . . . 2020." Id. Where the evidence shows that

9

plaintiff knew of Maye's existence and the outlines of her claims at the time the original complaint was filed, the court cannot find that he exercised reasonable diligence with respect to Maye.

Hagens first appeared in the record October 13, 2022, in an opt-in consent form and notice of filing. (DE 46-1). Williams appeared October 5, 2022, (DE 45 at 2, 45-1 at 15), and Flanagan November 21, 2022, (DE 57, 57-1 at 12), in similar filings. Hagens, Williams, and Morrison are three of the 241 plaintiffs that have opted into this action to date, and each of them opted in after plaintiff's deadline for adding additional parties had passed.

Plaintiff moved to amend his complaint April 21, 2023, well after the February 18, 2022, deadline for plaintiff to join additional parties or otherwise amend the pleadings, (see DE 26 at 5), but only a few months after Hagens, Williams, and Morrison became known to plaintiff. At the same time, counsel for the plaintiff faced a March 20, 2023, deadline to move for class certification, (see DE 37 at 2), an undertaking that involved a detailed memorandum of law, (see DE 92), and hundreds of pages of evidence submitted to the court. (See DE 82-91). Taking into account the late date that counsel discovered Hagens, Williams, and Morrison, the time and effort required to investigate thoroughly the new plaintiffs' claims, and the difficulty of preparing two substantive motions within a compressed timeframe, the court finds that plaintiff has demonstrated good cause to add these parties as named plaintiffs.

Plaintiff also meets the Rule 15 standard where no evidence of prejudice, bad faith, or futility is apparent. Although defendant's arguments are directed primarily at its opposition to adding new defendants rather than new plaintiffs, defendant also objects to adding new plaintiffs on the ground that it will increase litigation costs. (See DE 106 at 16). The factual allegations underpinning plaintiff's claims related to new plaintiffs, however, have not changed significantly from those in the original complaint, (see DE 100-2 at 14-19), making substantial increases in

discovery burdens unlikely at this time. Additionally, the record shows that defendant refused to identify putative class members when asked to do so, providing the name, dates of employment, and contact information only for plaintiff Speight, of whom plaintiff's counsel was already aware. (See DE 101-1 at 4-6). At that time, defendant objected that plaintiff's requests were "premature in seeking information associated with the alleged putative North Carolina class prior to a ruling on class certification." (Id. at 4). The court expresses no view on the merits of this claim; however, it undermines defendant's instant argument that plaintiff waited too long to add Hagens, Williams, and Morrison.

3. Sub-Classes

The proposed amended complaint adds six new subclasses: a subclass of crew leads and five subclasses of laborers assigned to work for each of the putative new defendants. Where no new defendants will be joined in this action for the reasons explained in part B(1) of this order, plaintiff may not add the five subclasses corresponding to those parties. However, plaintiff has shown good cause to add a subclass of crew leads.

Plaintiff has submitted evidence tending to show that employees designated as crew leads performed administrative work for which they were not compensated. (See, e.g., DE 101-4 at 7-8 (deposition of Robert Reese ("Reese"))). While the existence of crew leads is disclosed in the original complaint, (see DE 1 ¶ 31), there is little evidence to conclude that plaintiff knew or should have known the extent of crew leads' uncompensated duties. For example, a declaration by Reese, defendant's CEO, discloses that "crew leads . . . serve as liaisons between the respective regional Labor Source office and the crew members, as well as with the customer's on-site project manager," without naming any specific tasks. (DE 19-1 ¶ 9). It was not until August 24, 2022, when Reese's deposition was taken, that plaintiff learned that the time crew leads spent on

11

administrative tasks allegedly went unrecorded and unpaid. (See DE 101-4 at 7-8). Taking into account the workload issues discussed above, together with the time required to locate and investigate the claims of individuals who performed significant work as crew leads, the court finds that good cause has been demonstrated with respect to the crew lead subclass.

Defendant has not demonstrated the existence of prejudice, bad faith, or futility. As referenced above, a modest increase in litigation cost does not outweigh the interest of resolving an otherwise proper claim on the merits. See Foman, 371 U.S. at 182 ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). While the record does show that plaintiff worked as a crew lead for about three weeks, (see DE 106-5 at 4), he allegedly was told that this stint was a "week or two . . . trial just to see how [he could] hold out," and it does not appear that he understood the compensation scheme for his duties. (Id.). On this evidence, the lack of a crew lead subclass in the original complaint appears to stem from the factual complexity of this case rather than litigation strategy. Finally, defendant has not raised, and the court therefore does not decide, any question of futility regarding the subclass amendment.

## CONCLUSION

Based on the foregoing, plaintiff's motion to amend, (DE 99), is GRANTED IN PART and DENIED IN PART as set forth herein. Plaintiff is directed to file an amended complaint within seven days of entry of this order. Defendant is directed to file an answer or other responsive pleading within 21 days after the amended complaint is filed. Additionally, where the amendment of the complaint likely will alter some of the parties' arguments in support of or opposition to class certification, the motion for class certification, (DE 81), is TERMINATED as moot. Following

12

defendant's filing of an answer or other responsive pleading, the court will enter an order directing

the parties to confer and propose deadlines for briefing on class certification.

SO ORDERED, this the 12th day of July, 2023.

LOUISE W. FLANAGAN
United States District Judge

13