IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:21-CV-112

| | | |
|---|---|---|
| BILLY SPEIGHT, JASON HAGENS, SCOTTIE WILLIAMS, and TANGELA FLANAGAN, individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | ORDER |
| LABOR SOURCE, LLC, | ) ) | |
| Defendant. | ) ) | |

This matter comes before the court on plaintiffs' motion to certify class (DE 133) and defendant's motion for partial judgment on the pleadings. (DE 147). The issues raised have been briefed fully and in this posture are ripe for ruling. For the following reasons, defendant's motion is granted in part and denied in part, and plaintiffs' motion is denied.

## STATEMENT OF THE CASE

Plaintiff Billy Speight ("Speight"),[1] a former employee of defendant, a staffing agency, commenced this action August 12, 2021, asserting collective action claims on behalf of himself and others similarly situated under the Fair Labor Standards Act, 29 U.S.C. § 203 et seq. ("FLSA"); as well as putative class action claims under the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-250.1 et seq. ("NCWHA").

---

[1] In the original complaint plaintiff Speight is referenced as William Speight, but in the amended complaint filed July 19, 2013, he is referenced as Billy Speight.

1

On April 14, 2022, the court dismissed that part of plaintiff Speight's claims brought on behalf of employees "who did not work in North Carolina . . . or otherwise have the requisite connection to the state." (Order (DE 35) at 20). In the same order, the court denied without prejudice plaintiffs' motion to certify conditionally the proposed collective action. Thereafter, however, upon the parties' stipulation, the court conditionally certified an FLSA collective action comprised of "[a]ll current and former manual laborers employed by Defendant . . . on any project in North Carolina, at any time during the period from August 12, 2018 to the present." (DE 39 at 1).

After a period of discovery, July 12, 2023, the court allowed plaintiff Speight leave to amend the complaint to add new individual plaintiffs Jason Hagens ("Hagens"), Scottie Williams ("Williams"), and Tangela Flanagan ("Flanagan") (collectively, with Speight "plaintiffs"), but denied leave to add new defendants who were alleged customers of defendant. (See Order (DE 110) at 9). In that order, the court also terminated as moot a prior motion for class certification brought by plaintiff Speight, noting "amendment of the complaint likely will alter some of the parties' arguments in support of or opposition" thereto. (Id. at 12).

Plaintiffs filed the operative first amended complaint, July 19, 2023, reasserting their FLSA and NCWHA claims and seeking declaratory relief, certification of NCWHA claims as a class action, award of back pay, liquidated damages, and costs, expenses, and attorneys' fees.

Following an additional period of class discovery,[2] plaintiffs filed the instant motion to certify class April 10, 2024, requesting certification of the following class:

> All current and former hourly, non-exempt employees, including but not limited to, Laborers, non-exempt Crew Leads, non-commercial drivers, technicians, carpenters, apprentices, cleaning crew, plumbers, welders, and other Laborers with

---

[2] During this time, the court also denied plaintiffs' motion for relief from that part of the court's July 12, 2023, order denying leave to amend. (Order (DE 132) at 5).

similar job duties employed by Defendant within the State of North Carolina during the Class Period.

(DE 133 at 1). In addition, plaintiffs request certification of a subclass consisting of "[a]ny Class Member who was designated as or performed the duties of a Crew Lead." (Id. at 2). In their memorandum in support of the motion, plaintiffs assert that the Class Period is the time from August 12, 2019, to present.

In support of the motion, plaintiffs rely upon: 1) declarations of counsel, plaintiffs, and opt-in plaintiffs Joshua Brooks ("Brooks"), Jerry Gardner ("Gardner"), Mark Hinojosa ("Hinojosa"), Nikia Maye ("Maye"), and Delbert Owens ("Owens"); 2) excerpts of depositions of defendant's employees Jennifer Squires ("Squires"), Rachel Radford ("Radford"), Archie Toth ("Toth"), and Robert Reese ("Reese"); and 3) opt-in plaintiffs' responses to defendant's interrogatories and document requests. In opposition, defendant relies upon excerpts of plaintiffs' depositions, as well as additional excerpts of depositions of Squires, Radford, Toth, Reese, Gardner, as well as former employees Perfecto Cruz, Jr. ("Cruz") and Tywon Achane ("Achane"). Plaintiffs then replied in support of their motion.

In the meantime, defendant filed the instant motion for judgment on the pleadings, June 10, 2024, seeking dismissal of plaintiffs' NCWHA claims and related class allegations. Plaintiffs responded in opposition, and defendant replied, relying upon a complaint filed in the case Lima v. MH & WH, LLC, No. 5:14-CV-896-FL (E.D.N.C.).

With respect to case scheduling, the court's December 21, 2021, case management order leaves open deadlines for completion of discovery and for dispositive motions. The court's May 19, 2022, amended case management order, requires that within "14 days of the court's ruling on any motion for class certification . . . the parties shall submit further supplement to their joint report

3

and plan that proposes limits and deadlines for merits-based discovery," and it anticipates a period of expert discovery to follow. (DE 37 at 1-2).

## STATEMENT OF FACTS

The facts alleged in the complaint[3] may be summarized as follows.

Defendant is a staffing company based in Kansas that "recruits and assigns workers," such as plaintiffs and class and collective action members, (hereinafter, "workers") to other companies in various states, including North Carolina. (Compl. ¶ 31). Defendant provides "temporary staffing of manual laborers to those principals for projects." (Id. ¶ 32). "As a matter of common practice," defendant recruits workers from a local office "and then transports [them] to a worksite location in buses/passenger vans, which can be hundreds of miles away from the workers' homes." (Id. ¶ 32). "The various worksites are directed and overseen by principal contractors." (Id.).

Defendant does not pay workers "for such time driving from [defendant's] office to the various project locations." (Id. ¶ 33). Defendant also "does not reimburse [workers] for all expenses incurred for such travel and for the work to be performed for [defendant's] customers, including travel expenses such as gas, toll roads, and food." (Id.). "Once at the worksite location, the manual laborers are forced to stay in a hotel/motel room with strangers, generally four-to-six people per room even though the rooms only have two beds." (Id.). "Once at the worksite, the workers are essentially held captive at the worksite because they do not have their own transportation." (Id.). "The workers stay at the hotel/motel and perform labor on the worksite until the project is complete." (Id.).

---

[3] Hereinafter, all references to the complaint and "compl." in citations are to the first amended complaint (DE 111) unless otherwise specified.

"Each of the worksites . . . are overseen by a 'crew leader,' generally [defendant's] direct employee that is supervised and directed by [d]efendant's principal contractor who keeps track of the hours worked" by the workers." (Id. ¶ 34). "The crew leader requires [workers] to sign a daily time sheet at the end of their shift." (Id.). "Defendant's principal/contractor collects and compiles these daily timesheets and submits them to [defendant] in order to issue wage payments to the workers." (Id.)

"These time sheets, however, are often inaccurate in that the hours worked . . . are artificially reduced and under-reported at the direction of [defendant's] principal resulting in underpayment of wages." (Id. ¶ 35). Defendant "largely accepts these inaccurate time sheets at face value and regularly does nothing to ensure the time sheets reflect the actual hours worked." (Id.). Instead, defendant allegedly "allows its principal contractors to take undue advantage of these modest, hourly-paid manual laborers by grossly under-reporting their hours worked." (Id.). Defendant also refuses to "provide these out-of-town workers ready access to itemized wage statements that list the total hours worked and total wages paid," and it pays "workers through a pre-paid debit card system (in lieu of a traditional paycheck), often resulting in the workers not receiving itemized wage statements at all." (Id.).

"Moreover, the compensation . . . is not paid finally, unconditionally, free and clear of deductions and/or kickbacks." (Id. ¶ 36). "Defendant requires workers to incur numerous work-related expenses and/or improperly deducts amounts from their wages for [d]efendant's benefit." (Id.). "Defendant requires [workers] to incur certain expenses which would normally be borne by an employer, such as expenses for toll costs, gas, equipment, food, hotel, and other travel expenses for the benefit of [d]efendant [and its] principal contractors." (Id.). "Defendant does not reimburse [workers] for the[ir] travel, equipment, lodging, or other business expenses." (Id.).

5

For example, defendant "deducts approximately $7 to $20 per week per worker from the workers' pay for 'shuttle fees' or 'travel,' hotel/lodging fees, and other various deductions." (Id. ¶ 37). Even though defendant requires workers to "stay in a nearby motel adjacent to the work site, [d]efendant still regularly deducts 'hotel' expenses from the laborers, regardless of the actual room rate charged by the motel or the number of workers assigned per room." (Id.).

"Plaintiffs have worked for [defendant] on numerous projects, including projects throughout North Carolina and the United States." (Id. ¶ 38). "At each of these projects, [defendant] instituted and implemented the same policies and practices regarding timekeeping, recordkeeping, lodging, and expense deductions." (Id.). Plaintiff Speight is a resident of Walstonburg, North Carolina, who worked for defendant in 2018 and 2019. Plaintiff Hagens and Flanagan are residents of Goldsboro, North Carolina, who worked for defendant from approximately 2019 to 2022. Plaintiff Williams is a resident of Houston, Texas, who worked for defendant from 2018 to 2019.

Plaintiffs, and numerous other workers for projects in North Carolina, "have complained to [defendant's] offices on many occasions that they were not being paid for all hours worked." (Id. ¶ 40). "Although [defendant's] offices would promise to 'take care of it,' no changes were made." (Id.). "Due to the time-reduction and improper expense deduction schemes, [d]efendant does not pay hourly rates that meet the minimum wage requirement and does not pay a premium rate of time-and-a-half for all hours worked over 40 in a work week to" workers. (Id. ¶ 43). Likewise, "[a]s a result of [d]efendant's common pay, timekeeping, and recordkeeping practices, [they] have not been and are not compensated for all hours worked including all overtime hours, and their hourly rates of pay often fall below the minimum wage." (Id. ¶ 44).

As pertinent to plaintiffs' NCWHA claims, plaintiffs allege "[d]efendant diluted and continues to dilute [workers] regular hourly rates of pay below the minimum wage by improperly deducting 'expenses' from the workers' wages, as well as permitting [defendant's] customers to underreport or otherwise artificially reduce the total hours reported worked." (Id. ¶ 107). "Defendant further diluted [workers'] hourly rates of pay below the minimum wage by requiring them to perform off-the-clock work—including but not limited to travel time—which adds to the actual hours worked." (Id.).

"Moreover, [d]efendant regularly required [workers] to pay out-of-pocket for work expenses including personal protective equipment and transportation, lodging, and food when traveling to assigned work sites, and fail to fully reimburse [them] for these expenses, if at all." (Id.). "When the remuneration received . . . is reduced by unreimbursed out-of-pocket expenses, and then divided by the actual hours worked, [workers] are frequently compensated below the statutory minimum wage rate." (Id.). Defendant also did not compensate workers "with the appropriate overtime rate for work performed in excess of forty (40) hours per week." (Id. ¶ 111).

**COURT'S DISCUSSION**

A.  Motion for Judgment on the Pleadings

  1.  Standard of Review

In reviewing a motion for judgment on the pleadings, the court "appl[ies] the same standard as a 12(b)(6) motion to dismiss." Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

7

"Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual enhancement[,] ... unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[4]

2. Analysis

Defendant argues that plaintiffs' NCWHA claims must be dismissed because the NCWHA explicitly exempts employers such as defendant from the minimum wage and overtime requirements of the NCWHA, and because the FLSA preempts state-law claims for unpaid minimum and overtime wages. The court agrees only in part with defendant, such that plaintiffs' NCWHA claims for minimum wage and overtime wages must be dismissed, but plaintiffs' NCWHA claim in remaining part as set forth herein is allowed to proceed.

The NCWHA provides state law causes of action for "minimum wage," "overtime," and "payday" violations, through the following provisions:

> Every employer shall pay to each employee who in any workweek performs any work, wages of at least . . . the minimum wage set forth in [the FLSA].

N.C. Gen. Stat. § 95-25.3 (the "minimum wage" provision).

> Every employer shall pay each employee who works longer than 40 hours in any workweek at a rate of not less than time and one half of the regular rate of pay of the employee for those hours in excess of 40 per week.

Id. § 95-25.4 (the "overtime" provision).

> Every employer shall pay every employee all wages . . . accruing to the employee on the regular payday.

---

4   Throughout this order, internal quotation marks and citations are omitted unless otherwise specified.

Id. § 95-25.6 (the "payday" provision).

The NCWHA also provides an express exemption in that "[t]he provisions of G.S. 95-25.3 (Minimum Wage), [and] G.S. 95-25.4 (Overtime), do not apply to" employers covered by the FLSA, as defendant is alleged to be here. N.C. Gen. Stat. § 95.25.14 (emphasis added) (hereinafter, the "NCWHA exemption"). This NCWHA exemption is consistent with recognition by the United States Court of Appeals for the Fourth Circuit that "state claims [are] preempted by the FLSA where those claims have merely duplicated FLSA claims." Anderson v. Sara Lee Corp., 508 F.3d 181, 194 (4th Cir. 2007).

Although the Fourth Circuit and the North Carolina Supreme Court have not addressed application of the NCWHA exemption, this court and other courts in this circuit have recognized "it is 'well established that in order to bring a claim under the NCWHA payday provision, the claim must be separate and distinct from the plaintiff's FLSA minimum wage and overtime claims.'" Lima v. MH & WH, LLC, No. 5:14-CV-896-FL, 2019 WL 2602142, at *16 (E.D.N.C. Mar. 8, 2019) (quoting DeHoll v. Eckerd Corp., No. 1:18CV280, 2018 WL 5624150, at *5 (M.D.N.C. Oct. 30, 2018)). Thus, when a plaintiff's allegations made in support of NCWHA minimum wage and overtime claims are "the very same ones upon which [the plaintiff] relies to support his FLSA minimum wage and overtime claims," those NCWHA claims must be dismissed under the NCWHA exemption. Id.

By contrast, where a plaintiff asserts a NCWHA claim "premised upon unpaid regular time [it] will be allowed to proceed." Id. Likewise, a "[p]laintiff's NCWHA claim may proceed to the extent it seeks unpaid, earned, compensation apart from overtime pay." Id. at 15; see Canales v. OPW Fueling Components LLC, No. 5:22-CV-459-BO, 2024 WL 1361832, at *4 (E.D.N.C. Mar. 29, 2024) (same); Figueroa v. Butterball, LLC, No. 5:20-CV-585-D, 2021 WL 4203652, at *7

(E.D.N.C. Sept. 15, 2021) (same); In re Lowe's Companies, Inc. Fair Lab. Standards Act & Wage & Hour Litig., 517 F. Supp. 3d 484, 512 (W.D.N.C. 2021) (holding that the NCWHA payday provision "allow[s] for 'gap time' claims").  This is also consistent with the recognition by the Fourth Circuit that the FLSA is not "the proper vehicle to pursue back pay for straight time in pay cycles in which an employee has worked no overtime and has been paid at least minimum wage for all hours worked," which claims are more appropriate for "adjudication under state . . . law." Monahan v. Cnty. of Chesterfield, Va., 95 F.3d 1263, 1265 (4th Cir. 1996).

As an initial matter, a substantial portion of plaintiffs' NCWHA claims set forth in the complaint must be dismissed due to the NCWHA exemption for minimum wage and overtime wage claims.  In particular, plaintiffs assert a claim under the NCWHA for "[f]ailure to pay minimum wage," which is premised, in part, on "regular hourly rates of pay below the minimum wage," or "compensat[ion] below the statutory minimum wage rate."  (Compl. (DE 111) pp. 23-24, ¶ 107).  Plaintiffs also assert a claim under the NCWHA for "[o]vertime violation[s]," for failure to compensate workers "with the appropriate overtime rate for work performed in excess of forty (40) hours per week."  (Id. p. 25, ¶ 111).  These claims are based the same alleged improper deductions and expenses as plaintiffs' FLSA claims, including "expense deductions," "off-the-clock-work," "travel time," and "out-of-pocket . . . work expenses."  (Id. ¶ 107; cf. ¶¶ 33, 36-38, 43-44, 55, 57, 81, 84, 92, 93).  As such, where based upon a failure to pay a minimum wage and overtime wage, plaintiffs' NCWHA claims must be dismissed for failure to state a claim upon which relief can be granted.

By contrast, a limited part of plaintiffs' NCWHA claim under the heading "[f]ailure to pay minimum wage" constitutes a claim under the "payday" provision of the NCWHA, N.C. Gen. Stat. § 95-25.6.  (Compl. (DE 111) ¶ 102).  For example, plaintiffs allege that defendant "is required to

pay each employee at <u>or above</u> the minimum wage rate of $7.25 per hour for all hours worked." (<u>Id.</u> ¶ 103) (emphasis added). Plaintiffs allege that they "are directed to work by [d]efendant and, in fact, do work but are not compensated <u>at least</u> at the minimum wage rate for all time worked." (<u>Id.</u> ¶ 105) (emphasis). This portion of plaintiffs' NCWHA claim may proceed because it is neither based upon minimum wage nor overtime violations, but rather "premised upon unpaid regular time." <u>Lima</u>, 2019 WL 2602142 at *16; see <u>In re Lowe's Companies, Inc. Fair Lab. Standards Act & Wage & Hour Litig.</u>, 517 F. Supp. 3d at 513 ("Claims for 'gap time' compensation plainly satisfy th[e] [separate and distinct] requirement, even if the primary underlying facts of employment are necessarily the same (which would almost always be the case)."); <u>Martinez-Hernandez</u>, 578 F. Supp. 2d at 819–20 (E.D.N.C. 2008) (allowing NCWHA claims to proceed where, "[i]n addition to asserting overtime and minimum wage claims, plaintiffs claim that [the defendant] violated the North Carolina Wage and Hour Act by failing to pay its employees . . . wages, when due, for all hours worked at their regular hourly rate (<u>which exceeded</u> the minimum wage rate under the FLSA).") (emphasis added).

Defendant argues that "[p]laintiffs' NCWHA and FLSA claims all seek to recover the same wages that [p]laintiffs' are allegedly owed, which [p]laintiffs explicitly limit to minimum and overtime wages." (Def's Mem. (DE 148) at 8). This argument, in part, is without merit because it does not take into account wages sought "above the minimum wage rate" and "at least . . . the minimum wage," apart from overtime pay. (Compl. ¶¶ 101, 103, 105). Defendant also notes that the complaint in <u>Lima</u>, where this court allowed a payday claim to proceed, expressly asserted a "Failure to Pay All Owed Earned, and Promised Wages." (Def's Reply (DE 152) at 8) (quoting Def's Ex. A (DE 152-1) at 13)). This may be true, but the court is not bound by labels used in the complaint, but rather the substance of the factual allegations. See <u>Nemet Chevrolet, Ltd.</u>, 591 F.3d

11

at 255. Here, the facts alleged permit an inference that defendant failed to pay "every employee all wages . . . accruing to the employee on the regular payday," in violation of the NCWHA payday provision, N.C. Gen. Stat. § 95-25.6.

Defendant also faults plaintiffs for "fail[ing] to cite any authority that N.C. Gen. Stat. § 95-25.6 may serve as the basis for a claim for allegedly unpaid 'regular' or 'contractual' wages." (Def's Reply (DE 152) at 5 n. 2). In fact, neither party cites any binding case law delineating the full scope of an available claim under the NCWHA payday provision. However, the plain language of the statute, itself, provides that "[e]very employer shall pay every employee <u>all wages</u> . . . accruing to the employee on the regular payday." N.C. Gen. Stat. § 95-25.6 (emphasis added). In turn, a "'Wage' paid to an employee means compensation for labor or services rendered by an employee whether determined on a time, task, piece, job, day, commission, <u>or other basis of calculation</u>." <u>Id.</u> § 95-25.2(16) (emphasis added). Accordingly, this court and others in this circuit have held that a plaintiff's NCWHA payday claim "premised upon unpaid <u>regular</u> time will be allowed to proceed." <u>Lima</u>, 2019 WL 2602142, at *16 (emphasis added); <u>see, e.g., Martinez-Hernandez</u>, 578 F.Supp.2d at 820 (allowing NCWHA payday claim based upon an employee's "<u>regular</u> hourly rate") (emphasis added); <u>In re Lowe's Companies</u>, 517 F. Supp. 3d at 513 (same, characterized as "gap time"). Furthermore a NCWHA payday claim does not "requir[e] plaintiffs to prove that their employer <u>expressly agreed</u> to pay them for particular services performed" where they were "for the benefit of the employer." <u>Martinez-Hernandez</u>, 578 F. Supp. 2d at 822 (emphasis added).

Plaintiffs suggest in their brief that there may be certain types of alleged deductions and expenses in the complaint that are lawful under the FLSA but in violation of the NCWHA. (<u>See, e.g.</u>, Pls' Br. (DE 151) at 12 ("there is no direct expense reimbursement requirement under the

12

FLSA"). The complaint, however, does not make a distinction between the types of deductions and expenses that are violative of the NCWHA as opposed to the FLSA. (See, e.g., Compl. ¶¶ 33, 36-38, 43-44, 55, 57, 81, 84, 92, 93, 107). Moreover, plaintiffs do not cite any authority for differentiating the types of deductions and expenses that result in a NCWHA violation as opposed to a FLSA violation, apart from differences in the amount of wages due. See, e.g., In re Lowe's Companies, Inc., 517 F. Supp. 3d at 513 (noting it "would almost always be the case" that NCWHA claims for "gap time compensation" rely upon the same "primary underlying facts of employment" as FLSA claims); Martinez-Hernandez, 578 F. Supp. 2d at 820 (noting it "is of no moment that FLSA precedent may be considered in determining whether time spent changing into and out of protective gear or walking to or from work stations constitutes 'work' compensable under the payday statute"). The court accordingly leaves for another day, upon a more complete record, a determination of whether plaintiffs have identified deductions and expenses of a type that violate the NCWHA but are lawful under the FLSA.

In sum, for purposes of the instant motion for judgment on the pleadings, that part of plaintiffs' NCWHA claim under the payday provision may proceed, based upon defendant's alleged failure to pay plaintiffs "wages, when due, for all hours worked at their regular hourly rate (which exceeded the minimum wage rate under the FLSA)." Martinez-Hernandez, 578 F.Supp.2d at 820. In all other respects, plaintiffs' NCWHA claims for minimum wage and overtime wage are dismissed for failure to state a claim upon which relief can be granted.

B.  Motion to Certify Class

Federal Rule of Civil Procedure 23(a) sets forth four "prerequisites" of a class action:

(1) the class is so numerous that joinder of all members is impracticable ["numerosity"];

(2) there are questions of law or fact common to the class ["commonality"];

13

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"]; and

(4) the representative parties will fairly and adequately protect the interests of the class ["adequacy"].

Fed. R. Civ. P. 23(a); see Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011) ("Dukes") (labeling the Rule's four requirements as "numerosity, commonality, typicality, and adequate representation").

"A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact," typicality of claims, and adequacy of representation. Id. at 350. "It is the plaintiffs' burden to demonstrate compliance with Rule 23." EQT Prod. Co. v. Adair, 764 F.3d 347, 357 (4th Cir. 2014). "[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Dukes, 564 U.S. at 351.

"Although Rule 23 does not give district courts a license to engage in free-ranging merits inquiries at the certification stage, a court should consider merits questions to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." EQT Prod. Co., 764 F.3d at 358. "Prior to certifying a class, a district court must definitively determine that the requirements of Rule 23 have been satisfied, even if that determination requires the court to resolve an important merits issue." Id.

Here, the court's resolution of several issues pertaining to the merits of plaintiffs' remaining NCWHA claim precludes certification of plaintiffs' proposed class based on the current record. These issues concern the temporal and geographical scope of the NCWHA claim and the limitations placed upon plaintiffs' NCWHA claim as a result of the court's ruling on defendant's

14

motion for judgment on the pleadings. These issues undercut plaintiffs' evidence concerning all the Rule 23 prerequisites, particularly commonality and typicality.

The court begins with the temporal and geographical scope of the claim. Plaintiffs move to certify a class of workers "employed by Defendant within the State of North Carolina during the Class Period," defined as "any time from August 12, 2019 through the present." (Pls' Mot. (DE 133) at 1; Pls' Mem. (DE 134) at 7). This temporal scope reflects the two-year limitations period for NCWHA claims. See N.C. Gen. § 95-25.22(f).

With respect to geographic scope, more precision is required, given the "presumption" against giving a North Carolina statute "extraterritorial operation and effect." McCullough v. Scott, 182 N.C. 865, 109 S.E. 789, 796 (1921). In light of this presumption, the application of plaintiffs' NCWHA payday claim, which depends upon "labor or services rendered by an employee," N.C. Gen. Stat. § 95-25.2, properly is limited in this context to labor or services performed by an employee within the State of North Carolina. Cf. Poudel v. Mid Atl. Pros., Inc., ___ F.4th ___, 2024 WL 3818135, *5 (4th Cir. 2024) (holding that "no cause of action under the [Maryland] Wage Laws can be maintained without any work occurring in the state of Maryland"). As such, the class definition must be limited to workers who "performed labor or services within the State of North Carolina," and not just workers "employed by Defendant within the State of North Carolina," as plaintiffs' propose. (Pls' Mot. (DE 133) at 1).[5]

This geographical scope is significant, when coupled with the temporal limitation, because it renders irrelevant a large portion of the evidence submitted by plaintiffs in support of class certification. For example, plaintiff Speight states he was "employed by Labor Source as a laborer

---

[5] Plaintiffs did not respond to defendant's argument that the class definition should be so limited geographically. (See Def's Resp. (DE 149) at 10 n. 4). However, plaintiffs suggest that the class should be limited to those who worked on "projects in North Carolina" and "individuals who performed work in North Carolina." (Reply (DE 150) at 11).

15

and non-commercial driver from approximately January 2019 through approximately September 2019 on projects in North Carolina, Florida, Pennsylvania, Ohio, Nebraska, West Virginia, and Virginia." (Speight Decl. (DE 140) ¶ 2). He describes pay practices and procedures imposed in these projects, including inaccurate time sheets, underreporting of hours, deductions from pay, and unreimbursed expenses. (Id. ¶¶ 6-16). However, plaintiff Speight did not work on any projects in North Carolina after the limitations cutoff on August 12, 2019. (See Reese Decl. (DE 149-1) ¶22). Plaintiff Williams's declaration, as well as declarations of Gardner, Owens, Hinojosa, and Brooks, which are all similarly detailed in descriptions of inaccurate time sheets, underreporting of hours, deductions from pay, and unreimbursed expenses, are all irrelevant due to the same temporal and geographical limitation. (Id. ¶¶ 23, 26-27). Thus, the declarations of two out of four named plaintiffs, and four opt-in plaintiffs, demonstrate neither commonality with other properly-defined class members' experiences nor typicality. See E. Texas Motor Freight Sys. Inc. v. Rodriguez, 431 U.S. 395, 403 (1977) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members.").

Declarations by plaintiffs Hagens and Flanagan, while not wholly irrelevant, also are undercut by temporal limitation. For example, plaintiff Hagens states he was employed "approximately 2019 – 2021 on various projects in North Carolina"; plaintiff Flanagan states she was employed "from approximately 2019 on various projects in North Carolina"; and they describe pay practices related to travel, timekeeping, and expenses. (Hagens Decl. (DE 137) ¶2; Flanagan Decl. (DE 139) ¶2). But, within the limitations period, plaintiff Hagens worked on only one project in April 2019 in Charlotte and one other project in April 2020 in Rockingham, and plaintiff Flanagan only worked on the Rockingham project in April 2020. (See Reese Decl. ¶¶ 24-25). Likewise, among the projects mentioned by Maye, only the April 2020 project is relevant. (Maye

16

Decl. (DE 144) ¶ 5). As such, statements in their declarations tied to "various projects" rather than those specific projects are irrelevant, and the declarations are thus not sufficient to enable the court to conduct the "rigorous analysis" for class certification. Dukes, 564 U.S. at 351.

Additional evidence submitted by plaintiffs in support of their motion suffers from the same defects. For example, plaintiffs rely upon opt-in plaintiffs' responses to defendant's interrogatories, which require opt-in plaintiffs to specify "all projects and worksites on which [they] worked for [defendant] in the State of North Carolina during the Relevant Time Period." (E.g., DE 136-1 at 2). However, the "Relevant Time Period" is not defined in the filed documents. (E.g., Id. at 2-7). Thus, for most opt-in plaintiffs it is impossible to conclude, upon the standard of proof required for class certification, that their responses relate to the time period after August 12, 2019, as opposed to the time period after August 12, 2018, for the collective action, because they either do not provide specific dates of work in their responses or they confirm the earlier time period. (See, e.g., DE 136-1 at 10 (Anderson "2017 to 2019"); 17 (Arevalo (not specified)); 31 (Bella IV (not specified)); 38 (Blue (not specified)); 52 (Brown "unsure of the exact time frame" in North Carolina); 59 (Byrd (not specified)); 87 (Davis-Fuller "2018-March 2019"); 94 (De Los Santos (time in North Carolina not specified)); 101 (Espinosa "2018"); 115 (Flores "2018-2019"); 129 (Graza "2017-2019"); 136 (Griffin "2018-February 2019"); 143 (Herring "2018-2019"); 157 (Hypolite (not specified)); 164 (Lunsford "2018-2019"); 171 (Manley "2017-2019"); 178 (McAllister "about 2019"); 192 (Powell-Alston (time in North Carolina not specified)); 199 (Revels ("2018-2019"); 206 (Robinson "2019 for over two months"); 213 (Trotter ("2017 till about 2019"); 220 (Turner (not specified)); 234 (Whitehead ("January 2019"); 248 (Winn (not specified)). Those numerous responses therefore are not probative to class certification.

Furthermore, out of the evidence submitted that remains temporally relevant, in part, additional distinctions must be drawn based upon the court's instant ruling on the instant motion for judgment on the pleadings. In particular, plaintiffs provide no distinction between hours worked allegedly in violation of the FLSA minimum wage and overtime provisions (which are exempt under the NCWHA) and regular hours worked and not paid in violation of the NCWHA payday provision (which are the only hours now available for class treatment). Drawing such distinctions will further differentiate putative class members based upon projects worked and time spent on projects. Absent such distinctions the court cannot rigorously analyze either commonality nor typicality.

Further flaws in the evidence are due to the inherent differences between customers, projects, and geographical locations of worksites within North Carolina during the relevant time period. For example "[s]ince August 2019, [defendant] has contracted with at least 16 customers to provide staffing services for at least 45 projects in North Carolina." (Reese Decl. (DE 149-1) ¶ 6). Each customer has "care, custody and control of their worksites" and are "responsible for supervising [defendant's] employees on customer worksites." (Id. ¶ 7). Such differences distinguish the instant action from many cases, including all those cited by plaintiffs, in which this court and others readily have certified NCWHA class actions involving putative workers at a single location, or under single management, without intermediate managing entities like those present in the instant case. See, e.g., McLaurin v. Prestage Foods, Inc., 271 F.R.D. 465, 468 (E.D.N.C. 2010) ("turkey processing plant"); Gaxiola v. Williams Seafood of Arapahoe, Inc., 776 F. Supp. 2d 117, 121 (E.D.N.C. 2011) ("seafood processing plant"); Romero v. Mountaire Farms, Inc., 796 F. Supp. 2d 700, 713 (E.D.N.C. 2011) ("chicken processing plant"); Rehberg v. Flowers Baking Co. of Jamestown, LLC, No. 3:12-CV-00596-MOC, 2015 WL 1346125, at *2 (W.D.N.C. Mar.

18

24, 2015) (distributors of products from "defendant-owned warehouses"); Sandoval-Zelaya v. A+ Tires, Brakes, Lubes, & Mufflers, Inc., No. 5:13-CV-810-D, 2017 WL 4322404, at *1 (E.D.N.C. Sept. 28, 2017) (two employers "operate within the same facility"); Berber v. Hutchison Tree Serv., No. 5:15-CV-143-D, 2018 WL 3869980, at *2, 7 (E.D.N.C. Aug. 14, 2018) (granted as to one employer with a single "yard," and denied as to independent contracting entities); Mebane v. GKN Driveline N. Am., Inc., 337 F.R.D. 479, 485 (M.D.N.C. Nov. 5, 2020) (single operator of three regional manufacturing facilities); Roldan v. Bland Landscaping Co., Inc., 341 F.R.D. 23, 30 (W.D.N.C. 2022) (same managing entity and position); Wade v. JMJ Enterprises, LLC, No. 1:21CV506, 2023 WL 6391683, at *1 (M.D.N.C. Sept. 30, 2023) (single operator of three group homes); cf. Bartels v. Saber Healthcare Grp., LLC, No. 5:16-CV-283-BO, 2020 WL 6173566, at *1 (E.D.N.C. Oct. 21, 2020) (denying class certification for residents of various "adult care homes").

In sum, plaintiffs' motion is unavailing on several levels. It is conceivable that plaintiffs may be able to establish similarities across customers and projects in the relevant time period, sufficient to support a finding of commonality and typicality. However, plaintiffs have not done so based on the present record and motion. See Dukes, 564 U.S. at 351 ("[A]ctual, not presumed, conformance with Rule 23(a) remains indispensable."). The instant motion accordingly is denied. The court does not reach additional arguments raised by defendant, where class certification must be denied because of the threshold reasons stated herein.

C.  Case Scheduling

Under the terms of the court's December 21, 2021, case management order, and May 19, 2022, amended case management order, the court directs the parties to file a join report, within 14 days of the date of this order, that proposes limits and deadlines for any remaining merits-based

discovery, including deadlines for expert discovery, completion of all discovery, and dispositive motions. Thereupon the court will enter such further order that is warranted regarding case scheduling.

## CONCLUSION

Based on the foregoing, plaintiffs' motion to certify class (DE 133) is DENIED, and defendant's motion for partial judgment on the pleadings (DE 147) is GRANTED IN PART and DENIED IN PART. Plaintiffs' NCWHA claims based upon failure to pay minimum wage and overtime wages are DISMISSED. Plaintiffs' NCWHA claim based upon a violation of the NCWHA payday provision, N.C. Gen. Stat. § 95-24.6, as delineated herein, is allowed to proceed. The parties are DIRECTED to file, within 14 days of the date of this order, a joint status report regarding case scheduling, as set forth herein.

SO ORDERED, this the 23rd day of September, 2024.

                                        LOUISE W. FLANAGAN
                                        United States District Judge