# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# EASTERN DIVISION

| | |
|---|---|
| **WILLIAM SPEIGHT, JASON HAGENS, SCOTTIE WILLIAMS, and TANGELA FLANAGAN,** individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>**LABOR SOURCE, LLC,**<br><br>*Defendant*. | Case No. 4:21-CV-112-FL<br><br>Hon. Louise W. Flanagan<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DENYING CLASS CERTIFICATION** |

## I. INTRODUCTION

Class actions provide the opportunity to adjudicate transgressions to the personal rights and economic interests in circumstances where individual resources do not permit individuals to effectively pursue those rights on their own. This case is a textbook example: the resources of individual Labor Source employees are, by themselves, insufficient to vigorously pursue their NCWHA claims against their employer, which has at all times possessed superior resources and bargaining power over Class Members. Collectively, however, these claims provide the ability for Defendant's employees to obtain justice and keep the powerful in check. Denying certification deprives Class Members of this ability and results in manifest injustice to workers who did perform work and travel in North Carolina for Defendant's benefit, without pay, as these employees do not have the resources to seek recovery for these unpaid wages on their own.

With this fundamental purpose in mind, Plaintiffs respectfully request that the Court reconsider its order denying class certification. Contrary to the Court's order, the evidence shows that Plaintiffs and the putative Class Members performed work in North Carolina during the

-1-
Case 4:21-cv-00112-FL   Document 158   Filed 10/04/24   Page 1 of 12

putative Class Period by working on North Carolina projects and by traveling within the state to and from worksites (regardless of the location of the worksites). Plaintiffs submitted evidence in support of their motion for class certification (DE 133) showing that they and the putative Class Members spent a substantial amount of time traveling within North Carolina to and from worksites without compensation.[1] The Court's finding to the contrary overlooks evidence demonstrating the opposite, and the Court's denial of class certification based on "temporal and geographical scope" should be reconsidered. The Court's findings that Plaintiffs' claims lack common questions and are not typical of the putative Class Members' claims are also clearly erroneous to the extent they are based on the mistaken premise that Plaintiffs did not perform work in North Carolina during the Class Period.

Furthermore, whether Defendant actually paid Plaintiffs and the workers they seek to represent for time traveling within North Carolina to and from worksites is a merits issue common to all class members. Relevant here, all putative Class Members traveled to worksites in the same manner, mandated by the same policies and practices of Defendant. The question of whether Defendant paid its workers for this travel time (within North Carolina's borders) is thus ideal for class treatment, as a liability finding in either direction would apply to the whole Class.

The Court also committed clear error by concluding that work performed within the putative Class Period on North Carolina projects by Plaintiffs Hagens and Flanagan and opt-in plaintiff Maye is an insufficient basis on which to find commonality and typicality.[2] The record is undisputed that Plaintiffs Hagens and Flanagan and opt-in plaintiff Maye not only traveled within the state (along with the other Plaintiffs and opt-ins) but also worked on projects in North Carolina

---

[1] Declaration of Jason Hagens (DE 137), ¶¶ 6, 7; Declaration of Tangela E. Flanagan (DE 139), ¶¶ 5, 6; Declaration of Billy Speight (DE 140), ¶¶ 13, 14; Declaration of Joshua Brooks (DE 141), ¶¶ 5, 6; Declaration of Jerry Gardner (DE 142), ¶¶ 5, 6; Declaration of Nikia Maye (DE 144), ¶ 12; Declaration of Delbert Owens (DE 145), ¶¶ 5, 6.
[2] *See* DE 156, pp. 16–17.

during the putative Class Period.[3] The injuries suffered by these representative workers while working on North Carolina projects are the same as the injuries suffered by the putative Class Members who worked on North Carolina projects during the relevant time period. Thus, typicality is met. Commonality is also met because the injuries to Hagens, Flanagan, Maye, and the Class Members all flow from common practices and policies of Defendant, not from any individualized practices of the companies who contracted with Defendant for labor.

Because the Court overlooked the travel time and concluded that Hagens', Flanagan's, and Maye's work on North Carolina projects during the Class Period was insufficient for a finding of commonality and typicality, the Court's denial of certification was a clear error.

## II.  BACKGROUND

Plaintiffs filed the operative First Amended Complaint ("FAC") on July 19, 2023. (DE 111). In it, Plaintiffs allege two causes of action, each with two counts: violation of the Fair Labor Standards Act's ("FLSA's") and the North Carolina Wage and Hour Act's ("NCWHA's") minimum wage and overtime provisions. (DE 111, ¶¶ 77–116). Under the first Count of Plaintiffs' NCWHA cause of action, Plaintiffs also allege that Defendants violated North Carolina's "payday provision," N.C. Gen. Stat. § 95-25.6, which provides that "[e]very employer shall pay every employee all wages . . . accruing to the employee on the regular payday." (DE 156, p. 8).

On August 18, 2022, the Court approved the parties' stipulation to conditionally certify an FLSA Collective consisting of "[a]ll current and former manual laborers employed by Defendant Labor Source, LLC (d/b/a One Source Staffing and Labor and/or CATSTAFF) on any project in North Carolina, at any time during the period from August 12, 2018 to the present." (DE 39, p. 1). Notice was disseminated, and dozens of individuals have since filed consents to join the action as

---

[3] Declaration of Robert Reese (DE 149-1), ¶¶ 24, 25, 28.

opt-in plaintiffs. (*See* DE 40–64, 66–67, 69, 73–74, 78–79, 94, 95, 97, 112, 122, 127).

On April 10, 2024, Plaintiffs filed their motion for class certification, seeking to certify a North Carolina class under Federal Rule of Civil Procedure 23 of "[a]ll current and former hourly, non-exempt employees, including but not limited to, Laborers, non-exempt Crew Leads, non-commercial drivers, technicians, carpenters, apprentices, cleaning crew, plumbers, welders, and other Laborers with similar job duties employed by Defendant within the State of North Carolina at any time from August 12, 2019 through the present." (DE 134, p. 7). On September 23, 2024, the Court issued its Order denying Plaintiffs' motion and granting in part and denying in part Defendant's motion for judgment on the pleadings, which Defendant had filed on June 10, 2024. (DE 147).

Regarding Defendant's motion for judgment on the pleadings, the Court found that the FLSA preempted Plaintiffs' NCWHA claims for unpaid minimum and overtime wages (and dismissed those claims), but it determined that Plaintiffs' claim for unpaid wages at the regular rate (in violation of § 95-25.6) should proceed. (DE 156, p. 11). The Court then proceeded to analyze whether Plaintiffs' sole remaining state-law claim should be certified as a class action.

The Court's main reason for denying class certification was the problem of "temporal and geographical scope of the NCWHA claim." (DE 156, p. 14). According to the Court, because the NCWHA applies only to work performed within North Carolina, and the record shows that little work occurred in North Carolina during the putative Class Period of August 12, 2019 to the present, Plaintiffs had failed to provide sufficient evidence to satisfy Rule 23's prerequisites, particularly commonality and typicality. (DE 156, pp. 14–15).

The Court based its conclusion that Plaintiffs and the putative Class Members performed insufficient work in North Carolina during the relevant period mainly on the Declaration of Robert

Reese, submitted by Defendant in opposition to Plaintiffs' motion for class certification. (DE 149-1). In that declaration, Reese testified that Defendant had no record of any worked performed within North Carolina during the relevant time period by Plaintiffs Speight, Williams, or opt-in plaintiffs Jerry Gardner, Delbert Owens, Mark Hinojosa, Joshua Brooks (DE 149-1, ¶¶ 22–28). However, Reese confirmed that Hagens, Flanagan and Nikia Maye all performed work in North Carolina during the relevant time period. (DE 149-1, ¶¶ 22–28).

The Court also found that Plaintiffs had failed to sufficiently distinguish between hours worked without pay in violation of the NCWHA's payday provision and such hours worked in violation of the FLSA (DE 156, p. 18). However, Plaintiffs submitted evidence that they agreed to be paid at their regular hourly rate for all hours worked.[4] Hence, any and all time unpaid for work performed within North Carolina within the relevant time period is subject to a payday claim under the NCWHA. To the extent that Defendant contends Class Members agreed to be paid at the minimum wage for certain tasks, this is a merits issue based on disputed facts.

Finally, the Court found that inherent differences between customers, projects, and geographical locations of worksites within North Carolina during the relevant time period rendered Plaintiffs' motion "unavailing." (DE 156, pp. 18–19). This finding overlooks the broadly applied, common policy of requiring Class Members to always arrive to the job site early[5] and that Defendant's crew leads were the ones who filled out the timecards that caused Class Members to not be paid their regular hours owed under the NCWHA.[6]

## III. STANDARD

Federal district courts customarily consider motions for reconsideration under Rule 59(e),

---

[4] DE 137, ¶4; DE 139, ¶4
[5] DE 136-4, 36:24-37:22.
[6] DE 136-4, 35:20–36-4.

-5-
Case 4:21-cv-00112-FL   Document 158   Filed 10/04/24   Page 5 of 12

Rule 60(b), or Rule 54(b). *Adams v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the United States & Canada, Local 198*, 495 F.Supp.3d 392, 395 (M.D. La. 2020) (citing *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991) and *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991)); *see also St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997). While Rules 59(e) and 60(b) offer avenues to relief from a final judgment, Rule 54(b) is the appropriate rule for reconsideration of interlocutory orders— *i.e.*, orders that do not finally resolve all claims in an action. *Brown v. Univ. of N.C. at Chapel Hill*, No. 1:22-cv-717, 2024 U.S. Dist. LEXIS 93058, at *2 (M.D.N.C. May 24, 2024).

Rule 54(b) provides: "'any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end that action . . . and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'" *Henderson v. Clinton & Clinton*, No. 5:13-CV-635-FL, 2014 U.S. Dist. LEXIS 119225, at *17 (E.D.N.C. Aug. 15, 2014) (Flanagan, J.) (quoting Fed. R. Civ. P. 54(b)).

"Compared to motions to reconsider final judgments pursuant to Rule 59(e) of the Fed. R. Civ. P., Rule 54(b)'s approach involves broader flexibility to revise interlocutory orders before final judgment…." *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017). In general, district courts in the Fourth Circuit "will reconsider an interlocutory order in the following situations: (1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice." *Akeva L.L.C. v. Adidas Am., Inc.*, 385 F.Supp.2d 559 at 566 (M.D.N.C. 2005).

Here, as an initial matter, the Court's Order denying Plaintiff's motion for class certification does not adjudicate all claims against all parties and is therefore an interlocutory order subject to

reconsideration under Rule 54(b). *See Brown v. Nucor Corp.*, 785 F.3d 895, 927 (4th Cir. 2015) (noting a court's discretion to reconsider a class certification order under Rule 54(b)); *Lorenzo v. Prime Commc'ns., L.P.*, 806 F.3d 777, 782 (4th Cir. 2015) (describing an order denying class certification as an interlocutory order). Regarding the substance of the Order, reconsideration is appropriate because the Court committed clear error in finding that Plaintiffs and the putative Class Members did not perform work in North Carolina during the putative Class Period.

## IV. ARGUMENT

### A. The Court should reconsider its Order because Plaintiffs and the putative Class Members performed work in North Carolina during the putative Class Period when traveling within the state.

Reconsideration is warranted here because the Court has misapprehended the testimony of Robert Reese to conclude that Plaintiffs and the putative Class Members did not present evidence of NCWHA violations subject to common proof when they *did* work in North Carolina during the putative Class period. *See United States v. Duke Energy Corp.*, 218 F.R.D. 468, 474 (M.D.N.C. 2003) ("A motion to reconsider is appropriate when the court has obviously misapprehended a party's position or the facts or applicable law.") (internal quotation marks omitted).

Reese's testimony that Plaintiffs Speight and Williams and opt-in plaintiffs Gardner, Hinojosa, Brooks, and Owens did not work on any projects based in North Carolina during the putative Class Period does not account for the time these workers spent traveling from Defendant's office in North Carolina to out-of-state worksites and back. For a portion of these outgoing and incoming journeys, Plaintiffs and the putative Class Members were within the state of North Carolina, traveling in Defendant's vans, discussing work, and otherwise under the control of Defendant.[7] This is work performed in North Carolina during the relevant time period; it does not

---

[7] DE 137, ¶¶ 6, 7, 8-13; DE 139, ¶¶ 5, 6, 7-10; DE 140, ¶¶ 13, 14; DE 141, ¶¶ 5, 6, 7-10; DE 142 ¶¶ 5, 6, 7-10; DE 144, ¶ 12; DE 14, ¶¶ 5, 6, 7-10.

matter that the projects were based out of state.

If Plaintiffs' evidence that this work was uncompensated is credited by the fact finder, then liability may be established on a classwide basis, as all of the putative Class Members were subject to the same requirements to meet at Defendant's office in North Carolina, board a passenger van, and travel to worksites within and outside of North Carolina.[8] Defendant had "GPS trackers on the vans," so it "knew exactly where they were at."[9] Thus, it would not be difficult to establish which portions of Plaintiffs' and the putative Class Members' travels occurred within North Carolina.

The Court's concerns regarding variations among worksites are immaterial, as the uncompensated work in question did not occur at worksites. Like the cases "in which this court and others readily have certified NCWHA class actions," the workers' injuries here all occurred "at a single location" (the vans), "under single management" (Defendant's), and "without intermediate managing entities" (as the contracting companies did not come into play until the workers reached the worksite).[10] Thus, neither temporal or geographical scope nor commonality is a concern that should prevent class certification.

> **B. The Court should also reconsider its Order because Plaintiffs and the putative Class Members were subject to common policies set by Defendant when they performed work in North Carolina during the putative Class Period irrespective of the project or customer.**

As the Court acknowledged, Plaintiffs Hagens and Flanagan and opt-in plaintiff Maye not only traveled within North Carolina but also worked on projects in North Carolina during the putative Class Period.[11] Hagens and Flanagan worked on the BluSky project in Rockingham, North Carolina in April of 2020.[12] Maye worked on the BluSky project in April of 2020 and on another

---

[8] DE 137, ¶¶ 6, 7; DE 139, ¶¶ 5, 6; DE 140, ¶ 13; DE 141, ¶ 5, 6; DE 142, ¶¶ 5, 6; DE 144, ¶ 12; DE 145, ¶¶ 5, 6.
[9] Excerpts from the Deposition of Jennifer Squires (DE 136-2), 20:8–10.
[10] DE 156, p. 18.
[11] DE 149-1, ¶¶ 24, 25, 28.
[12] *Id.* at ¶¶ 24, 25.

project in Chapel Hill, North Carolina in November and December of 2020.[13] The Court found that these workers' testimony regarding Defendant's alleged violations were vague and not tied to these projects, but that is not accurate.

For example, Maye testified that crew leads were instructed to turn in time sheets that did not accurately reflect the number of hours worked for "all … Labor Source projects," including the Rockingham project.[14] Likewise, Hagens and Flanagan make clear that Defendant's travel policies applied to "all the projects [they] worked for Labor Source in North Carolina," and the statements without reference to a specific project are properly read in context to refer to all projects.[15]

Thus, the evidence plainly shows that Plaintiffs performed work in North Carolina during the proposed Class Period. As such, all Plaintiffs' claims are typical of the claims of those Class Members who traveled within North Carolina without pay, and Plaintiff Hagens' and Plaintiff Flanagan's claims are also typical of those Class Members who worked without pay in connection with North Carolina projects.

Individualized inquiries related to multiple worksites under different companies' control are not so significant as to block certification. The evidence shows that Defendant paid its workers based on time sheets filled out by its own crew leads.[16] This timekeeping practice was the same across all customers and projects, and the injuries flowing from it are common to the Class.[17] Likewise, Defendant's practice of requiring crew leads to tell workers to arrive to worksites 15

---

[13] *Id.* at ¶ 28.
[14] DE 149-1; DE 144, ¶ 7.
[15] DE 137, ¶¶ 6, 7, 8-25; DE 139, ¶¶ 5, 6, 7-24.
[16] DE 136-4, 35:20-36:4.
[17] DE 149-1, ¶ 19; Opt-In Plaintiff Karon Davis-Fuller's Responses to Defendant Labor Source, LLC's Interrogatories and Document Requests, Set One (DE 149-13), p. 175; Excerpts from the Deposition of Tywon Achane (DE 149-9), 47:22-48:15; Excerpts from the Deposition of Jerry Gardner (DE 149-11), 40:24-41:3,
Excerpts from the Deposition of Scottie Williams (DE 149-3), 55:9-12.

minutes before their official start time was uniform across projects.[18] Plaintiff Hagens and Plaintiff Flanagan both submitted temporally and geographically relevant facts to support a NCWHA claim for unpaid wages arising from Defendant's practice of requiring employees to arrive early and not track or pay for that time.[19]

Because the alleged practices and resulting violations associated with work in North Carolina are common to the Class, the temporally relevant evidence showing that Plaintiffs and the putative Class Members performed work in North Carolina, both when traveling within the state and, as with Plaintiffs Hagens and Flanagan, when performing work on projects within the state, is sufficient to support class certification. Accordingly, Plaintiffs respectfully request that the Court reconsider its Order and certify the proposed Class, as limited per the Court's Order to workers who "performed labor or services within the State of North Carolina."[20]

### C. Should the Court decline to certify the proposed Class, as defined, it should certify a narrower Class of workers who traveled in North Carolina for Defendant without pay.

As an alternative to the putative Class proposed in Plaintiffs' class certification motion, Plaintiffs request that, in light of the undisputed evidence showing that Plaintiffs and all of Defendant's similarly situated workers traveled in North Carolina for Defendant's benefit without pay, the Court should certify the following narrower proposed Class: all current and former hourly, non-exempt employees, including but not limited to, Laborers, non-exempt Crew Leads, non-commercial drivers, technicians, carpenters, apprentices, cleaning crew, plumbers, welders, and other Laborers with similar job duties *who traveled to and from jobsites for Defendant's benefit* within the State of North Carolina at any time from August 12, 2019 through the present. Courts

---

[18] DE 136-4, 36:24-37:22.
[19] DE 137, ¶ 14; DE 139, ¶ 11.
[20] DE 156, p. 15.

have the discretion to modify proposed class definitions and should exercise it here. *Sanders v. Gladiator, Inc.*, No. 5:08-CV-555-FL, 2010 U.S. Dist. LEXIS 165369, at *7 n.5 (E.D.N.C. Apr. 12, 2010)

## V.  CONCLUSION

For the foregoing reasons, the Court should grant this motion, reconsider its Order denying class certification, and enter a new order certifying the proposed Class or, in the alternative, certifying a narrower class as defined above.

Dated: October 4, 2024

Respectfully Submitted,

**SCHNEIDER WALLACE COTTRELL KONECKY LLP**

  /s/ Ryan A. Quadrel
Carolyn H. Cottrell (Cal. SBN 166977)
Ori Edelstein (Cal. SBN 268145)
Ryan A. Quadrel (Cal. SBN 308311)
2000 Powell Street, Suite 1400
Emeryville, California 94608
ccottrell@schneiderwallace.com
oedelstein@schneiderwallace.com
rquadrel@schneiderwallace.com

*Counsel for Plaintiff, Class, and Collective Members*

/s/John J. Nestico
John J. Nestico (N.C. SBN 39457)
6000 Fairview Road, Suite 1200
Charlotte, North Carolina 28210
Tel: (510) 740-2946;
Fax:(415) 421-7105
jnestico@schneiderwallace.com

*Local Civil Rule 83.1(d) Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2024, I filed this motion through the United States District Court for the Eastern District of North Carolina's CM/ECF system, which will serve an electronic copy on all counsel of record.

                                                  */s/ Ryan A. Quadrel*
                                                  Ryan A. Quadrel